## ARTICLE 6
### FIRST OFFER RIGHTS

For the period commencing on the Closing date and ending on the fifth (5th) anniversary of the Closing Date, Buyer shall have a right of first offer to provide each of the Services on a bulk basis to any new residential properties controlled by Sellers or their Affiliates within the following Counties in Tampa Bay: Citrus, Hardee, Hernando, Hillsborough, Levy, Manatee, Pasco, Pinellas, Polk and Sarasota, and within the following Counties in Central Florida: Brevard, Flagler, Lake, Orange, Osceola, Seminole, Sumter and Volusia (collectively, the "Counties"). Solely for purposes of this Article 6, the phrase "residential properties controlled by Sellers or their Affiliates" shall mean that Sellers or the ultimate beneficial owners of the Sellers directly or indirectly own or have the right to vote or direct the vote of greater than fifty percent (50%) of the outstanding voting interests or securities of the Person that holds title to such residential property.

Each time a Seller or any Affiliate of a Seller intends to have an association or other entity in any residential properties controlled by Sellers or their Affiliates within any of the Counties purchase Services on a bulk basis, Sellers shall notify Buyer in writing of the Services that it desires to have provided to homeowners within such new development ("Sellers' Notice") prior to soliciting any offers from or otherwise having any contact with any third party regarding the provision of such Services. Such Sellers' Notice shall be delivered within a reasonable time after Plat approval for each new development for which Services on a bulk basis will be sought. Each Sellers' Notice shall be given in substantially the form attached hereto as Exhibit D and shall specify (i) the number and character of the homes to be developed (e.g. single family, MDU, etc.); and (ii) the average anticipated sale price per unit and shall include a copy of the Plat submitted to the relevant Governmental Authority for approval; and shall be certified by a duly authorized officer of Managing Member or the controlling entity of such residential property as to the truth and accuracy of each of the items specified therein.

Within thirty (30) days of receipt of Sellers' Notice, Buyer shall provide a written proposal to Sellers or Sellers' Affiliates, as the case may be, of its desire to provide such bulk services. For the thirty (30) day period following delivery to Sellers' or Sellers' Affiliates of Buyer's written proposal (the "Exclusive Negotiation Period"), Buyer and Sellers or Sellers' Affiliates shall negotiate in good faith exclusively with Buyer for the provision of the Services. During such period, neither Sellers nor any of their Affiliates shall solicit offers from, respond to any unsolicited offers from or otherwise engage in any communication with any third party for the provision of such services. If, after the expiration of the Exclusive Negotiation Period, Sellers and Buyer are unable to reach an agreement for the provision of the Services, then Sellers and their

Affiliates shall be free to solicit and accept offers from third parties for the provision of the Services.

Provisions herein to the contrary notwithstanding, Buyer may not, without the prior written consent of Managing Member, which it may grant or withhold in its sole discretion, assign any of its rights or delegate any of its obligations under this Article 6 except in connection with a subsequent sale of the Systems or Buyer.

Buyer acknowledges that Affiliates of Sellers have engaged and continue to engage in the business of owning, developing, investing in and financing real estate projects in the Counties (the "Primary Business"), which Primary Business may from time to time involve forming enterprises to provide Services in such projects, and that it is not the intent of Buyer to limit in any way the Primary Business, provided that (i) the first offer rights described in this Article 6 include first offer rights for participating with Sellers or Sellers' Affiliates in any enterprise formed to provide Services to residential properties controlled by Sellers or their Affiliates and (ii) the fact that Sellers or their Affiliates provide Services or have formed an enterprise with a third party to provide Services shall not relieve Sellers or their Affiliates from their first offer obligations hereunder in respect of any residential properties controlled by Sellers or their Affiliates within any of the Counties. In the event of any ambiguity in the terms of this Agreement, the same shall be construed in the manner that minimizes any limits or obligations on the conduct of such Primary Business while fully preserving the intended benefits to Buyer hereunder.

### ARTICLE 7
### CONDITIONS PRECEDENT

7.1. Conditions to Buyer's Obligations. The obligation of Buyer to consummate the transactions contemplated by this Agreement shall be subject to the following conditions, any of which may be waived by Buyer in its sole discretion:

(a) Accuracy of Representations and Warranties. The representations and warranties of Sellers in this Agreement shall be true and accurate in all material respects (except to the extent such representations and warranties are qualified as to materiality, in which case, such representations and warranties shall be true and correct in all respects) at and as of Closing with the same effect as if made at and as of Closing, except for changes permitted or contemplated by this Agreement or otherwise agreed to in writing by the parties.

(b) Performance of Agreements. Sellers shall have performed in all material respects all obligations and agreements and complied with all

Error! Unknown document property name.        30

covenants in this Agreement to be performed and complied with by it at or before Closing.

(c)   Legal Proceedings.   There shall be no Legal Requirement, and no Judgment shall have been entered and not vacated by any Governmental Authority with legal jurisdiction in connection with any Litigation, which (i) enjoins, restrains, makes illegal, or prohibits consummation of the transactions contemplated by this Agreement, or (ii) requires separation or divestiture by Buyer of all or any significant portion of the Assets after Closing, and there shall be no Litigation pending or threatened seeking, or which if successful would have the effect of, any of the foregoing.

(d)   Live Oak Preserve Litigation.   The proceedings instituted by the Live Oak Preserve Association, Inc. against Century Live Oak Preserve, LLC (Case No. 07-17571) in the Circuit Court for Hillsborough County, Florida shall have been dismissed or withdrawn with prejudice, and, to the extent such dismissal or withdrawal is based in whole or in part on any settlement agreement with the Live Oak Preserve Association, Inc., such settlement shall be on terms acceptable to Buyer in its sole discretion. In addition, Buyer shall have received from the Live Oak Preserve Association, Inc. the Estoppel Certificate required to be delivered pursuant to Section 7.1(g) below.

(e)   EchoStar Right of First Refusal.   Buyer shall have received evidence, in form and substance satisfactory to it that EchoStar Satellite L.L.C. ("EchoStar") has irrevocably waived its right of first refusal to purchase the Assets set forth in The Digital Programming Services Agreements between EchoStar and the Managing Member listed on Schedule 3.19 hereof (the "Digital Programming Services Agreements").

(f)   Consents.   Buyer shall have received evidence, in form and substance satisfactory to it, that all Consents have been obtained.

(g)   Estoppel Certificates.   Buyer shall have obtained Estoppel Certificates for each of the Bulk Service Agreements (other than the Falcon Parc Bulk Service Agreement) in the form attached hereto as Exhibit E.

(h)   Lien Releases.   Buyer shall have received the results of searches of the appropriate public records (as determined and paid for by Buyer), dated no more than ten (10) days prior to the Closing Date, or other evidence satisfactory to it, that there exist no Liens affecting the Assets or that any such Liens affecting the Assets will be terminated at or prior to Closing.

(i)   Deliveries.   Sellers shall have made all of the deliveries to Buyer set forth in Section 8.2.

(j)    No Material Adverse Change.  There shall have been no Material Adverse Change in the Assets or any of the Systems since the date of this Agreement other than general conditions in the cable industry known to Buyer.

(k)    No FCC Action.  No action shall have been taken by the FCC or any other Governmental Authority that limits the enforceability of any provision of the Bulk Service Agreements.

(l)    Programming Deletion.  Upon written notice from Buyer to Sellers given at least thirty (30) days prior to Closing, Sellers shall have deleted from the Systems any programming services (i) that Buyer shall not carry on the Systems after Closing or (ii) which Buyer determines, in its reasonable judgment, may result in liability on the part of Buyer for copyright payments after Closing in excess of those payments made by Sellers with respect to carriage of such signals prior to Closing.

(m)    Bulk Sales and Other Requirements.  Buyer shall have (i) received evidence satisfactory to it that Sellers have complied with all Legal Requirements relating to sales, transfer and franchise taxes applicable to Sellers or to the transactions contemplated hereby.

(n)    License for Security Business.  Sellers shall have caused James B. Trinchini to enter into an EF License and Consulting Agreement with Buyer on substantially the same terms contained in the EF License Qualifying and Consulting Agreement between Mr. Trinchini and the Managing Member dated December 27, 2001 (the "Trinchini Agreement"), or otherwise obtained for Buyer a licensing arrangement sufficient to permit Buyer at closing to provide the same security services to the Communities that Sellers currently provide to the Communities on terms no less favorable to Buyer than those contained in the Trinchini Agreement.

(o)    Security Alarm Monitoring Agreement.  Sellers shall have assigned to Buyer the Security Alarm Monitoring Agreement with Marlin Central Monitoring, LLC described on Schedule 3.6 hereto (the "Marlin Agreement") or caused Marlin Central Monitoring, LLC to have entered into a separate agreement with Buyer on terms no less favorable to Buyer than those contained in the Marlin Agreement.

(p)    Security Business Assurances. Buyer shall have received from Sellers evidence satisfactory to it, that all steps have been taken that are necessary to qualify Buyer under all applicable laws and regulations to provide the security services currently provided by Sellers to the Communities.

(q)  **Transition Services Agreement.**  The parties shall each have agreed in their sole discretion on the services, term of the services and rates for the services to be performed under a Transition Services Agreement, a form of which is attached hereto as Exhibit A.

7.2.  **Conditions to Sellers' Obligations.**  The obligation of Sellers to consummate the transactions contemplated by this Agreement shall be subject to the following conditions, any of which may be waived by Sellers in their sole discretion:

(a)  **Accuracy of Representations and Warranties.**  The representations and warranties of Buyer in this Agreement shall be true and accurate in all material respects (except to the extent such representations and warranties are qualified as to materiality, in which case, such representations and warranties shall be true and correct in all respects) at and as of Closing with the same effect as if made at and as of Closing, except for changes permitted or contemplated by this Agreement.

(b)  **Performance of Agreements.**  Buyer shall have performed in all material respects all obligations and agreements and complied with all covenants in this Agreement to be performed and complied with by it at or before Closing.

(c)  **Legal Proceedings.**  There shall be in effect no Legal Requirement, and no Judgment shall have been entered and not vacated by any Governmental Authority with legal jurisdiction in connection with any Litigation, which enjoins, restrains, makes illegal, or prohibits consummation of the transactions contemplated hereby, and there shall be no Litigation pending or threatened seeking, or which if successful would have the effect of, the foregoing.

(d)  **Right of First Refusal.**  Seller shall have obtained from EchoStar a waiver of the right of first refusal contained in the Digital Programming Services Agreement.

(e)  **Consents.**  Sellers shall have obtained all Consents.

(f)  **Transition Services Agreement.**  The parties shall each have agreed in their sole discretion on the services, term of the services and rates for the services to be performed under a Transition Services Agreement, a form of which is attached hereto as Exhibit A.

7.3.  **Failure of Condition Precedent.**  Neither party shall be liable to the other for any failure to close by reason of having failed to satisfy any condition

precedent, provided that such party acted in good faith and made a commercially reasonable effort to satisfy such condition.

## ARTICLE 8
## CLOSING

8.1.  <u>Closing; Time and Place</u>.   The closing of the transactions contemplated by this Agreement ("<u>Closing</u>") shall take place on the last day of the month following the date that is the fifth (5th) business day following satisfaction or waiver of the conditions set forth in <u>Sections 7.1 and 7.2</u> or on such other date as Buyer and Sellers may mutually agree (the "<u>Closing Date</u>"), at the offices of Buyer's counsel, Four Times Square, New York, New York, or by mail, as Buyer and Sellers may mutually agree; provided, however, that in no event shall Closing take place later than May 31, 2008 (the "<u>Outside Closing Date</u>").

8.2.  <u>Sellers' Obligations</u>.  At Closing, Sellers shall deliver or cause to be delivered to Buyer, the following:

(a)     <u>Transition Services Agreement</u>.  A Transition Services Agreement in the form attached hereto as <u>Exhibit A</u> with a completed Annex A, setting forth the services, term of the services and fees for the services.

(b)     <u>Escrow Agreement</u>.  The Escrow Agreement in the form attached hereto as <u>Exhibit F</u>.

(c)     <u>Bill of Sale and Assignment</u>.  A fully-executed Bill of Sale and Assignment in the form attached hereto as <u>Exhibit B</u> transferring the Assets from Sellers to Buyer.

(d)     <u>Officer's Certificate</u>.  A certificate executed by a duly authorized officer of Managing Member, dated as of Closing, reasonably satisfactory in form and substance to Buyer, certifying that the conditions specified in <u>Sections 7.1(a) and 7.1(b)</u> have been satisfied.

(e)     <u>Opinion of Counsel</u>.  An opinion of Nason, Yeager, Gerson, White & Lioce P.A., counsel to Sellers and Guarantor, dated as of the Closing Date, substantially in the form attached to this Agreement as <u>Exhibit C</u>.

(f)     <u>Books and Records</u>.  To the extent not previously delivered, copies of all Licenses, Assumed Contracts, customer and subscriber lists, engineering records, files and records used by Sellers in connection with the operation of the Systems.

(g)   Other.  Such other documents and instruments as shall be necessary to effect the intent of this Agreement and consummate the transactions contemplated hereby.

8.3.  Buyer's Obligations.  At Closing, Buyer shall deliver or cause to be delivered to Sellers the following:

(a)   Purchase Price.  The Purchase Price, as adjusted pursuant to Section 2.6.

(b)   Transition Services Agreement.  A Transition Services Agreement in the form attached hereto as Exhibit A with a completed Annex A, setting forth the services, term of the services and fees for the services.

(c)   Escrow Agreement.  The Escrow Agreement in the form attached hereto as Exhibit F.

(d)   Bill of Sale and Assignment.  A fully-executed Bill of Sale and Assignment in the form attached hereto as Exhibit B assuming the Assumed Contracts.

(e)   Officer's Certificate.   A certificate executed on behalf of Buyer, dated as of Closing, reasonably satisfactory in form and substance to Sellers, certifying that the conditions specified in Sections 7.2(a) and 7.2(b) have been satisfied.

(f)   Other.  Such other documents and instruments as shall be necessary to effect the intent of this Agreement and consummate the transactions contemplated hereby.

## ARTICLE 9
## TERMINATION AND DEFAULT

9.1.  Termination Events.  This Agreement may be terminated and the transactions contemplated hereby may be abandoned:

(a)   at any time, by the mutual written agreement of Buyer and Sellers;

(b)   by either Buyer or Sellers, upon written notice to the other, at any time, if the other is in breach or default of its respective covenants, agreements, or other obligations herein, or if any of its representations herein are not true and accurate when made or when otherwise required by this Agreement to be true and accurate, and such breach, default or failure is not cured within ten (10) days of receipt of notice that such breach, default or failure exists or has occurred;

(c)     by either Buyer or Sellers upon written notice to the other, if Closing shall not have occurred on or before the Outside Closing Date for any reason other than a breach or default by such party of its respective covenants, agreements, or other obligations hereunder, or any of its representations herein not being true and accurate in all material respects when made or when otherwise required by this Agreement to be true and accurate in all material respects; or

(d)     as otherwise provided herein.

9.2.   <u>Effect of Termination</u>. The termination of this Agreement pursuant to <u>Section 9.1</u> shall not limit or affect any remedy a party may have with respect to any breach of this Agreement by the other party occurring prior to such termination. <u>Section 5.19</u> and <u>Article 10</u> and <u>Article 11</u> shall survive any termination of this Agreement.

## ARTICLE 10
## INDEMNIFICATION

10.1.   <u>Indemnification by Sellers</u>.     Notwithstanding Closing, and regardless of any investigation made at any time by or on behalf of Buyer or any information Buyer may have, Sellers shall defend, indemnify and hold harmless Buyer, its Affiliates, partners, members, managers, officers, directors, employees, agents, and representatives, and any third party claiming by or through any of them, as the case may be, from and against any and all Losses arising out of or resulting from:

(a)   any representations and warranties made by Sellers in this Agreement or in any Transaction Document not being true, accurate and complete when made or when required by this Agreement or such Transaction Document to be true, accurate and complete;

(b)   any failure by Sellers to perform any of its covenants, agreements, or obligations in this Agreement or in any Transaction Document;

(c)   all actual or purported liabilities and obligations of Sellers, and all claims and demands made in respect thereof, whether or not known or asserted at or prior to Closing (other than the Assumed Obligations and Liabilities) to the extent a claim or demand is made against a Buyer Indemnified Party for payment of such liabilities or obligations;

(d)   the operation of the Systems prior to the Adjustment Time, including any Losses arising under any environmental Legal Requirement to the extent attributable to actions occurring or conditions existing on or prior to the Closing Date;

Error! Unknown document property name.        36

(e)  any liabilities relating to Sellers' Affiliates' employees asserted under any Legal Requirement or otherwise pertaining to any labor or employment matter arising out of actions occurring prior to Closing;

(f)  all obligations and liabilities arising out of or relating to the Excluded Assets; and

(g)  any failure of Sellers to comply with the Legal Requirements, if any, relating to bulk sales applicable to the transactions contemplated hereby.

If, by reason of the claim of any Person relating to any of the matters subject to such indemnification, a Lien is placed or made upon any of the properties or assets owned or used by Buyer or any other indemnitee hereunder, in addition to any indemnity obligation of Sellers under this Article, if the Lien is not released within thirty (30) days after Sellers are made aware of the Lien by Buyer or otherwise, Sellers shall furnish a bond sufficient to obtain the prompt release thereof within five (5) days from receipt of notice relating thereto. Notwithstanding anything to the contrary contained herein, except in the case of fraud or willful misconduct, Sellers shall have no obligation of indemnity under <u>Section 10.1(a)</u> until the aggregate amount of Sellers' liability exceeds Fifty Thousand Dollars ($50,000); provided that if the aggregate amount of Sellers' liability exceeds Fifty Thousand Dollars ($50,000), Buyer shall be entitled to the full amount thereof and not just the excess over Fifty Thousand Dollars ($50,000).

10.2.  <u>Indemnification by Buyer.</u>  From and after Closing, Buyer shall defend, indemnify and hold harmless Sellers, their Affiliates, shareholders, officers, directors, employees, agents, and representatives, and any third party claiming by or through any of them, as the case may be, from and against any and all Losses arising out of or resulting from:

(a)  any representations and warranties made by Buyer in this Agreement or in any Transaction Document not being true, accurate and complete when made or when required by this Agreement or such Transaction Document to be true, accurate and complete;

(b)  any failure by Buyer to perform any of its covenants, agreements, or obligations in this Agreement or in any Transaction Document;

(c)  the operation of the Systems after the Adjustment Time; and

(d)  the Assumed Obligations and Liabilities.

10.3.   Claims for Indemnity; Third Party Claims.

(a)   Whenever a claim for Losses shall arise for which one party ("Indemnitee") shall be entitled to indemnification under this Article 10, Indemnitee shall notify the indemnifying party ("Indemnitor") in writing promptly after the first receipt of notice of such claim, provided that failure to provide prompt notice shall not affect the right of Indemnitee to be indemnified hereunder except to the extent that Indemnitor's rights are materially adversely affected by such delay. Such notice shall specify all facts known to Indemnitee giving rise to such indemnification rights.     The right of Indemnitee for indemnification, as set forth in the notice, shall be deemed agreed to by Indemnitor unless, within thirty (30) days after receipt of such notice, Indemnitor shall notify Indemnitee in writing that it disputes the right of Indemnitee to indemnification. If Indemnitee shall be duly notified of such dispute, the parties shall attempt to settle and compromise the same first by referring such matters to an executive officer of each party prior to commencing any Litigation to interpret the terms of this Agreement.

(b)   Upon receipt by Indemnitor of a notice from Indemnitee with respect to any claim of a third party against Indemnitee, and acknowledgment by Indemnitor (whether after resolution of a dispute or otherwise) of Indemnitee's right to indemnification hereunder with respect to such claim, Indemnitor shall assume the defense of such claim with counsel reasonably satisfactory to Indemnitee and Indemnitee shall cooperate to the extent reasonably requested by Indemnitor in defense or prosecution thereof and shall furnish such records, information and testimony and attend all such conferences, discovery proceedings, hearings, trials and appeals as may be reasonably requested by Indemnitor in connection therewith. If Indemnitor shall acknowledge Indemnitee's right to indemnification and elect to assume the defense of such claim, Indemnitee shall have the right to employ its own counsel in any such case, but the fees and expenses of such counsel shall be at the expense of Indemnitee. If Indemnitor has assumed the defense of any claim against Indemnitee, Indemnitor shall have the right to settle any claim for which indemnification has been sought and is available hereunder; provided that, to the extent that such settlement requires Indemnitee to take, or prohibits Indemnitee from taking, any action or purports to obligate Indemnitee, then Indemnitor shall not settle such claim without the prior written consent of Indemnitee, such consent not to be unreasonably withheld. If Indemnitor does not assume the defense of a third party claim or disputes Indemnitee's right to indemnification, Indemnitee shall have the right to defend against such claim (and be indemnified hereunder for the cost of such defense) until Indemnitor's obligation to indemnify is established pursuant to this Section 10.3 and Indemnitor duly assumes the defense of the case, and Indemnitor shall have the right to participate in the defense of such claim

through counsel of its choice, at Indemnitor's expense, but Indemnitee shall have control over the defense and authority to resolve such claim subject to this Section 10.3.

10.4.  **Survival of Representations, Warranties and Covenants.**  All covenants and agreements contained in this Agreement shall survive the Closing. Unless specified otherwise in this Agreement, the representations and warranties of Sellers and Buyer in this Agreement shall survive the Closing for a period of eighteen (18) months, except for (i) those contained in Sections 3.1, 3.2, 3.3, 3.19, 3.20, 4.1, 4.2, and 4.3, which shall survive indefinitely, and (ii) those contained in Sections 3.8, 3.9, 3.11 and 3.12, which shall survive for the applicable statute of limitations. Sellers and Buyer shall have no liability under Sections 10.1(a) and 10.1(b), respectively, unless a claim for Losses for which indemnification is sought thereunder is asserted by Buyer or Sellers, as the case may be, within the applicable survival period.

### ARTICLE 11
### MISCELLANEOUS PROVISIONS

11.1.  **Expenses.**  Except as otherwise provided in this Agreement, each of the parties shall pay its own expenses and the fees and expenses of its counsel, accountants, and other experts in connection with this Agreement.

11.2.  **Waivers.**  No action taken pursuant to this Agreement, including any investigation by or on behalf of any party hereto, shall be deemed to constitute a waiver by the party taking the action of compliance with any representation, warranty, covenant or agreement herein.  The waiver by any party hereto of any condition or of a breach of another provision of this Agreement shall not operate or be construed as a waiver of any other condition or subsequent breach.  The waiver by any party of any of the conditions precedent to its obligations under this Agreement shall not preclude it from seeking redress for breach of this Agreement other than with respect to the condition so waived.

11.3.  **Notices.**  All notices, requests, demands, applications and other communications which are required to be or may be given under this Agreement shall be in writing and shall be deemed to have been duly given if sent by facsimile transmission, courier, certified first class mail, postage prepaid, return receipt requested, or overnight delivery service to the parties hereto at the following addresses:

| | |
|---|---|
| To Sellers: | The Falcone Group, LLC<br>1951 NW 19th Street, Suite 200<br>Boca Raton, FL 33431<br>Attention:  Mr. Robert Falcone<br>and<br>Anthony Morrison, Esq.<br>Chief Legal Officer<br>Facsimile:  (561) 961-1875 |
| Copy to: | Nason, Yeager, Gerson, White & Lioce P.A.<br>1645 Palm Beach Lakes Boulevard, Suite 1200<br>West Palm Beach, FL 33401<br>Attention:  John White, II, Esq.<br>Facsimile:  (561) 686-5442 |
| To Buyer: | Bright House Networks, LLC<br>c/o Advance Newhouse Communications<br>5000 Campuswood Drive<br>East Syracuse, NY 13057<br>Attention:  Mr. William A. Futera<br>Executive Vice President and<br>Chief Executive Officer<br>Facsimile:  (315) 463-4127 |
| Copies to: | Sabin, Bermant & Gould LLP<br>Four Times Square<br>New York, NY 10036<br>Attention:  Andrew P. Kransdorf, Esq.<br>Facsimile:  (212) 381-7226 |
| To Guarantors: | Arthur Falcone, Trustee<br>Arthur Falcone Amended and Restated<br>Revocable Living Trust Agreement,<br>dated November 4, 2005<br>c/o The Falcone Group, LLC<br>1951 NW 19th Street, Suite 200<br>Boca Raton, FL 33431<br>Attention:  Mr. Arthur Falcone<br>and<br>Anthony Morrison, Esq.<br>Chief Legal Officer<br>Facsimile:  (561) 961-1875 |

Error! Unknown document property name.          40

Robert J. Falcone, Trustee
Robert J. Falcone Revocable Living Trust,
dated September 1, 1993, as amended by that
certain First Amendment dated as of September
10, 1997, as amended by that certain First
Amendment dated April 30, 2004
c/o The Falcone Group, LLC
1951 NW 19th Street, Suite 200
Boca Raton, FL 33431
Attention:   Mr. Robert Falcone
                    and
             Anthony Morrison, Esq.
             Chief Legal Officer
Facsimile:   (561) 961-1875

Edward Falcone
c/o The Falcone Group, LLC
1951 NW 19th Street, Suite 200
Boca Raton, FL 33431
Attention:   Mr. Edward Falcone
                    and
             Anthony Morrison, Esq.
             Chief Legal Officer
Facsimile:   (561) 961-1875

Neil Eisner
c/o The Falcone Group, LLC
1951 NW 19th Street, Suite 200
Boca Raton, FL 33431
Attention:   Mr. Neil Esiner
                    and
             Anthony Morrison, Esq.
             Chief Legal Officer
Facsimile:   (561) 961-1875

or to such other address as any party shall have furnished to the other by
notice given in accordance with this Section.  Such notice shall be effective,
(i) if sent by facsimile transmission, when confirmation of transmission is
received (unless such delivery is made on a non-business day or any day after
5:00 p.m., in which event, delivery will be deemed to have been made on the
following business day); (ii) when delivered personally; (iii) five (5) days after
deposit in the U.S. mail; or (iv) two (2) days after deposit with a reputable
overnight carrier service.

Error! Unknown document property name.        41

11.4.  <u>Publicity</u>.  Neither party shall issue a press release concerning this Agreement or the transactions contemplated hereby prior to Closing.  After Closing, Sellers and Buyer shall consult with and cooperate with the other with respect to the content and timing of all press releases and other public announcements concerning this Agreement and the transactions contemplated hereby.  Except as required by applicable legal requirements, neither Sellers nor Buyer shall make any such release, announcement, or statements without the prior written consent and approval of the other, and each shall keep the existence and terms of this Agreement confidential as provided in <u>Section 5.21</u>.

11.5.  <u>Risk of Loss</u>.  The risk of any loss or damage to the Assets resulting from fire, flood, theft or any other casualty or Material Adverse Event shall be borne by Sellers at all times prior to the Adjustment Time.  In the event that any such loss or damage shall be sufficiently substantial so as to preclude and prevent resumption of normal operations of any material portion of any of the Systems or the replacement or restoration of the lost or damaged property within thirty (30) days from the occurrence of the event resulting in such loss or damage, Sellers shall immediately notify Buyer in writing of its inability to resume normal operations or to replace or restore the lost or damaged Assets, and Buyer, at any time within thirty (30) days after receipt of such notice, may elect by written notice to Sellers to either (i) waive such defect and proceed toward consummation of the transaction in accordance with the terms of this Agreement, or (ii) terminate this Agreement.  If Buyer elects to so terminate this Agreement, Buyer and Sellers shall stand fully released and discharged of any and all obligations hereunder (except for obligations intended to survive hereunder).  If Buyer shall elect to consummate the transactions contemplated by this Agreement notwithstanding such loss or damage and does so, all insurance proceeds payable as a result of the occurrence of the event resulting in such loss or damage shall be delivered by Sellers to Buyer, or the rights thereto shall be assigned by Sellers to Buyer if not yet paid over to Sellers.

11.6.  <u>Binding Effect; Benefits; Assignment</u>.  This Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective successors and permitted assigns.  Buyer shall have the right to assign the Purchase Agreement and its rights and obligations thereunder to acquire the Assets to (i) an Affiliate of Buyer or (ii) a qualified intermediary or an exchange accommodation title holder, as part of an exchange of like-kind properties under Section 1031 of the Internal Revenue Code of 1986, as amended, in either case without the consent of Sellers. Notwithstanding any such assignment, Buyer would remain liable to Sellers; and if Buyer intends for this transaction to be a part of a Section 1031 like-kind exchange, then any expenses (including attorneys' fees and costs) incurred by Sellers that are related only to the exchange shall be paid or reimbursed to Sellers by Buyer at

Error! Unknown document property name.        42

or prior to the closing of the exchange under the Purchase Agreement. Except for the assignments described above, neither Buyer nor Sellers shall assign this Agreement or delegate any of its duties hereunder to any other party without the prior written consent of the other, which consent shall not be unreasonably withheld.

11.7. Entire Agreement; Amendments.   This Agreement and the Exhibits, Appendices and Schedules hereto embody the entire agreement between the parties hereto with respect to the subject matter hereof and supersedes all prior agreements and understandings, oral or written, with respect thereto. This Agreement may not be modified orally, but only by an agreement in writing signed by the party or parties against whom any waiver, change, amendment, modification, or discharge may be sought to be enforced.

11.8. Governing Law. The validity, performance, and enforcement of this Agreement shall be governed by the laws of the State of Florida, without giving effect to the principles of conflicts of law of such state.

11.9. Counterparts. This Agreement may be executed in any number of counterparts, each of which, when executed, shall be deemed to be an original and all of which together will be deemed to be one and the same instrument.

11.10. Further Assurances. From time to time after Closing, Sellers shall, if requested by Buyer, make, execute and deliver to Buyer such additional assignments, bills of sale, deeds and other instruments of transfer, as may be necessary or proper to transfer to Buyer all of Sellers' right, title and interest in and to the Assets. In addition, Sellers hereby grant to Buyer a license for ninety (90) days following the Closing to use any or all of the tangible Excluded Assets, if any, not otherwise provided for herein, as may be required to operate the Systems.

11.11. Collection of Accounts. From and after Closing, Buyer shall have the right and authority, at its expense, to collect for its account all items to which it is entitled as provided in this Agreement and to endorse with the name of Sellers any checks or drafts received on account of any such items.

11.12. Attorneys' Fees. The prevailing party in any action to enforce the terms of this Agreement shall be entitled to reimbursement by the other party for all costs (including reasonable attorneys' fees) incurred in connection with such proceeding, in addition to any other remedies to which it may be entitled.

11.13. Schedules, Appendices and Exhibits; Headings. All references herein to schedules, appendices and exhibits are to the schedules, appendices and exhibits attached hereto, which shall be incorporated in and constitute a

part of this Agreement by such reference. The headings in this Agreement are for the purpose of reference only and shall not limit or otherwise affect the meaning of this Agreement.

11.14. <u>Remedies Cumulative</u>. Except as expressly provided otherwise in this Agreement, in addition to any remedies provided in this Agreement, the parties will have all remedies provided at law or in equity. The rights and remedies provided in this Agreement or otherwise under applicable laws will be cumulative and the exercise of any particular right or remedy will not preclude the exercise of any other rights or remedies in addition to, or as an alternative of, such right or remedy, except as expressly provided otherwise in this Agreement.

11.15. <u>Guaranty</u>. Guarantors hereby, jointly and severally, irrevocably and unconditionally guarantee the full and prompt payment and performance of all amounts that may be owed by Sellers and all other obligations of Sellers under <u>Section 10</u> hereof, subject to the rights and defenses of Sellers under this Agreement, as the same may be terminated, altered, released, extended, modified or canceled (the "<u>Sellers' Obligations</u>"). The obligations of Guarantors pursuant to this <u>Section 11.15</u> shall remain in full force and effect until the Sellers' Obligations have been fully and finally paid and if, by reason of any bankruptcy, insolvency or other similar proceeding instituted by or against the Sellers, any payment in respect of any Sellers' Obligations is required to be repaid by Buyer, this <u>Section 11.15</u> shall continue to be applicable to the payment of such obligations to the same extent as though the payment so recovered or repaid had never been originally made. This <u>Section 11.15</u> shall remain in full force and effect throughout the term of Sellers' Obligations under this Agreement, until all of Sellers' Obligations under this Agreement have been fully performed in accordance with the terms thereof and Guarantors' obligations under this <u>Section 11.15</u> shall not be terminated, modified, affected or impaired by reason of (a) any alteration, extension, modification, release or cancellation of any of Sellers' Obligations; (b) any action which Buyer may take or fail to take against Sellers; (c) any waiver, indulgence or extension of time which Buyer may grant respecting Sellers' Obligations; (d) any enforcement of or failure to enforce any of the terms, covenants or conditions of this Agreement or Sellers' Obligations; (e) the failure to give notice of any default of Sellers' Obligations or of any modification or extension thereof or any indulgence granted thereunder; or (f) any relief or discharge of Sellers from any of Sellers' Obligations in bankruptcy or similar proceedings, or by liquidation or dissolution; provided, however, that in the case of subsections (a) through (e) above, Guarantors' obligations under this <u>Section 11.15</u> shall be terminated, altered, released, extended, modified or cancelled to the extent Sellers' Obligations are terminated, altered, released, extended, modified or cancelled. The obligations of Buyer under this Agreement shall conclusively be deemed to

have been created, contracted, or incurred in reliance upon this <u>Section 11.15</u> and all dealings between Sellers and Buyer shall likewise be conclusively presumed to have been had or consummated in reliance upon this <u>Section 11.15</u>. Notwithstanding anything to the contrary contained herein, Buyer shall apply all amounts in the Escrow Account to the recovery of any Losses prior to seeking recovery from the Guarantors provided such amounts are then immediately available for such application. If, for any reason, such funds are not immediately available, then such obligation to seek recovery first from the Escrow Account shall not apply.

[Signature Page Follows]

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date set forth above.

PURCHASER:

BRIGHT HOUSE NETWORKS, LLC

By: _____

Name: William A. Futera

Title: Executive Vice President & CFO

SELLERS:

CENTURY COMMUNICATIONS
OF FLORIDA, INC.

By: _____

   Name:

   Title:

CENTURY DANIEL'S LANDING, LLC
CENTURY FALCON PARC, LLC
CENTURY FALCON PINES, LLC
CENTURY HAMMOCKS, LLC
CENTURY INDEPENDENCE, LLC
CENTURY LIVE OAK PRESERVE, LLC
CENTURY SAVANNAH PINES, LLC
CENTURY SAVANNAH LANDING, LLC
CENTURY VICTORIA PINES
LANDING, LLC

By:  Century Communications of
    Florida, Inc., its Managing
    Member

By: _____

   Name:

   Title:

GUARANTORS:

ARTHUR FALCONE AMENDED AND
RESTATED REVOCABLE LIVING
TRUST, DATED NOVEMBER 4, 2005

By: _____

   Arthur Falcone, Trustee

ROBERT J. FALCONE REVOCABLE
LIVING TRUST, DATED SEPTEMBER
1, 1993, AS AMENDED BY THAT
CERTAIN FIRST AMENDMENT
DATED AS OF SEPTEMBER 10,
1997, AS AMENDED BY THAT
CERTAIN FIRST AMENDMENT
DATED APRIL 30, 2004

By: _____

   Robert J, Falcone, Trustee

_____

EDWARD FALCONE

_____

NEIL EISNER

196532-v6        (Signature Page to Asset Purchase Agreement)

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date set forth above.

PURCHASER:

BRIGHT HOUSE NETWORKS, LLC

By: _____
    Name:
    Title:

SELLERS:

CENTURY COMMUNICATIONS
OF FLORIDA, INC.

By: _____
    Name:                    Pres
    Title:

CENTURY DANIEL'S LANDING, LLC
CENTURY FALCON PARC, LLC
CENTURY FALCON PINES, LLC
CENTURY HAMMOCKS, LLC
CENTURY INDEPENDENCE, LLC
CENTURY LIVE OAK PRESERVE, LLC
CENTURY SAVANNAH PINES, LLC
CENTURY SAVANNAH LANDING, LLC
CENTURY VICTORIA PINES
LANDING, LLC

By:  Century Communications of
    Florida, Inc., its Managing
    Member

By: _____
    Name:
    Title:

GUARANTORS:

ARTHUR FALCONE AMENDED AND
RESTATED REVOCABLE LIVING
TRUST, DATED NOVEMBER 4, 2005

By: _____
    Arthur Falcone, Trustee

ROBERT J. FALCONE REVOCABLE
LIVING TRUST, DATED SEPTEMBER
1, 1993, AS AMENDED BY THAT
CERTAIN FIRST AMENDMENT
DATED AS OF SEPTEMBER 10,
1997, AS AMENDED BY THAT
CERTAIN FIRST AMENDMENT
DATED APRIL 30, 2004

By: _____
    Robert J. Falcone, Trustee

_____
EDWARD FALCONE

_____
NEIL EISNER

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date set forth above.

PURCHASER:                          GUARANTORS:

BRIGHT HOUSE NETWORKS, LLC          ARTHUR FALCONE AMENDED AND
                                    RESTATED REVOCABLE LIVING
                                    TRUST, DATED NOVEMBER 4, 2005

By:_____        By:_____
    Name:                               Arthur Falcone, Trustee
    Title:

SELLERS:                            ROBERT J. FALCONE REVOCABLE
                                    LIVING TRUST, DATED SEPTEMBER
CENTURY COMMUNICATIONS              1, 1993, AS AMENDED BY THAT
OF FLORIDA, INC.                    CERTAIN FIRST AMENDMENT
                                    DATED AS OF SEPTEMBER 10,
                                    1997, AS AMENDED BY THAT
By:_____        CERTAIN FIRST AMENDMENT
    Name:                           DATED APRIL 30, 2004
    Title:

                                    By:_____
                                        Robert J. Falcone, Trustee

CENTURY DANIEL'S LANDING, LLC
CENTURY FALCON PARC, LLC
CENTURY FALCON PINES, LLC
CENTURY HAMMOCKS, LLC               _____
CENTURY INDEPENDENCE, LLC           EDWARD FALCONE
CENTURY LIVE OAK PRESERVE, LLC
CENTURY SAVANNAH PINES, LLC
CENTURY SAVANNAH LANDING, LLC
CENTURY VICTORIA PINES              _____
LANDING, LLC                        NEIL EISNER

By:  Century Communications of
     Florida, Inc., its Managing
     Member

By:_____
    Name:
    Title:

# APPENDIX A

## Communities

| Service Area | Completed Units* |
|---|---|
| Daniel's Landing | 250 |
| Falcon Parc | 209 |
| Falcon Pines | 257 |
| The Hammocks | 239 |
| Independence | 602 |
| Live Oaks | 931 |
| Savannah Pines | 207 |
| Savannah Landing | 0 |
| Victoria Pine/Landing | 300 |

### TOTAL UNITS

| | |
|---|---|
| * As of December 31, 2007 | 2,995 |

Error! Unknown document property name.Appendix A

## APPENDIX B

### Bulk Service Agreements

1. Agreement, dated January 15, 2003, by and between Century Daniel's Landing, LLC, Transeastern Properties, Inc. and Daniel's Landing Association, Inc. ("Association")

2. Agreement, dated May 15, 2003, by and between Century Live Oak Preserve, LLC, Live Oak Development 1, LLC and Live Oak Development 2, LLC and Live Oak Preserve Association, Inc.

3. Agreement, dated March 1, 2004, by and between Century Independence, LLC, Transeastern Independence, LLC and Independence Association, Inc.

4. Agreement, dated January 31, 2005, by and between Century Hammocks Pines, LLC, Transeastern Hammocks, LLC and The Hammocks Master Association, Inc.

5. Agreement, dated January 31, 2005, by and between Century Savannah Pines, LLC, Transeastern Savannah, LLC and Savannah Pines Condominium, Inc.

6. Agreement, dated January 31, 2005, by and between Century Victoria Pines Landings, LLC, Transeastern Young Pines, LLC and Victoria Community Association, Inc.

7. Agreement, dated December 12, 2006, by and between Century Falcon Pines, LLC and Young Pines Apartments, LLC.

8. Amended and Restated Agreement, dated October 16, 2006, by and between Century Falcon Parc, LLC and Falcon Moss Apartments, LLC.

Error! Unknown document property name.Appendix B

# AMENDMENT TO
## ASSET PURCHASE AGREEMENT

This Amendment, dated May 30, 2008, amends the Asset Purchase Agreement (the "Asset Purchase Agreement") entered into as of February 21, 2008, by and among Bright House Networks, LLC, a Delaware limited liability company and Century Daniel's Landing, LLC, a Florida limited liability company, Century Falcon Parc, LLC, a Florida limited liability company, Century Falcon Pines, LLC, a Florida limited liability company, Century Hammocks, LLC, a Florida limited liability company, Century Independence, LLC, a Florida limited liability company, Century Live Oak Preserve, LLC, a Florida limited liability company, Century Savannah Pines, LLC, a Florida limited liability company, Century Savannah Landing, LLC, a Florida limited liability company, Century Victoria Pines Landing, LLC, a Florida limited liability company, Century Communications of Florida, Inc., a Florida corporation, and Arthur Falcone, as Trustee of the Arthur Falcone Amended and Restated Revocable Living Trust Agreement, dated November 4, 2005, Robert J. Falcone, as Trustee of the Robert J. Falcone Revocable Living Trust, dated September 1, 1993, as amended by that certain First Amendment dated as of September 10, 1997, as amended by that certain First Amendment dated April 30, 2004, Edward Falcone and Neil Eisner. All terms defined in the Asset Purchase Agreement will have the same meanings herein as ascribed to them therein.

The parties hereby agree as follows:

1.      The parties agree to conduct the Closing on June 10, 2008, subject to the fulfillment of the conditions in Article 7 of the Asset Purchase Agreement. Time is of the essence. In the event no Closing is held on or prior to June 30, 2008, no non-breaching party will have any further obligations hereunder. Closing will be consummated through a mail escrow with Buyer's counsel.

2.      Buyer acknowledges and agrees that the conditions precedent expressed in subparagraphs (d), (e), (f), (g), (m), (n), (o) and (p) of Section 7.1 of the Asset Purchase Agreement have been satisfied or will be waived at Closing.

3.      Based on Sellers' representations that the written notice to subscribers required by Sections 5.20 and 7.1(l) has been made, Buyer will accept such notices as satisfying such Sections.

4.      The parties agree that the obtaining by Sellers of the consent of Orange County to Sellers' transfer of the Systems to Buyer and to the termination of the OVS agreement is a condition precedent to the obligation of Buyer to consummate the transactions contemplated by the Asset Purchase Agreement.  The Orange County consent shall be deemed a Consent for

207891-v3



purposes of Section 5.11 and the Schedules, and Sellers' representations and warranties shall be conformed accordingly; in that connection, Buyer agrees to have a representative at the meeting of the Orange County Board of Commissioners scheduled for June 3, 2008 during which the consent resolution will be considered for the purpose of answering any inquiries about the transaction. Sellers will have a representative at such meeting.

5.     Sellers will compute the revenues of Systems for June 2008, which shall be included on the Initial Adjustment Certificate (and constitute part of the Adjustment Amount) as a subtraction from the Purchase Price and from the Closing Date Payment.

6.     The Transition Services Agreement shall be in the form attached hereto as Exhibit A, subject to Buyer's right to delete prior to Closing any of the current services.

7.     This Amendment may be executed in any number of counterparts, each of which, when executed, will be deemed to be an original and all of which together will be deemed to be one and the same instrument.

8.     The Asset Purchase Agreement is in full force and effect, is enforceable in accordance with its terms and is unmodified, except as expressly set forth in this Amendment.

9.     Any signature to a counterpart copy of this Amendment delivered via telephone facsimile or electronic mail will be deemed to be an original signature.

[Signature Page Follows]

207891-v3

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date set forth above.

PURCHASER:                            GUARANTORS:

BRIGHT HOUSE NETWORKS, LLC            ARTHUR FALCONE AMENDED AND
                                      RESTATED REVOCABLE LIVING
                                      TRUST, DATED NOVEMBER 4, 2005

By:_____
    Name:                             By:_____
    Title:                                Arthur Falcone, Trustee

SELLERS:                              ROBERT J. FALCONE REVOCABLE
                                      LIVING TRUST, DATED SEPTEMBER
CENTURY COMMUNICATIONS                1, 1993, AS AMENDED BY THAT
OF FLORIDA, INC.                      CERTAIN    FIRST    AMENDMENT
                                      DATED AS OF SEPTEMBER 10,
                                      1997, AS AMENDED BY THAT
By:_____          CERTAIN FIRST AMENDMENT
    Name:                             DATED APRIL 30, 2004
    Title:

                                      By:_____
                                          Robert J. Falcone, Trustee


CENTURY DANIEL'S LANDING, LLC
CENTURY FALCON PARC, LLC
CENTURY FALCON PINES, LLC             _____
CENTURY HAMMOCKS, LLC
CENTURY INDEPENDENCE, LLC             EDWARD FALCONE
CENTURY LIVE OAK PRESERVE, LLC
CENTURY SAVANNAH PINES, LLC           _____
CENTURY SAVANNAH LANDING, LLC
CENTURY VICTORIA PINES LANDING, LLC   NEIL EISNER

By:  Century Communications of Florida, Inc.,
     its Managing Member


By:_____
    Name:
    Title:


207891-v3

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date set forth above.

PURCHASER:                              GUARANTORS:

BRIGHT HOUSE NETWORKS, LLC              ARTHUR FALCONE AMENDED AND
                                        RESTATED REVOCABLE LIVING
                                        TRUST, DATED NOVEMBER 4, 2005

By:_____
    Name:   William A. Putera           By:_____
    Title:  EVP & CFO                       Arthur Falcone, Trustee

SELLERS:                                ROBERT J. FALCONE REVOCABLE
                                        LIVING TRUST, DATED SEPTEMBER
CENTURY COMMUNICATIONS                  1, 1993, AS AMENDED BY THAT
OF FLORIDA, INC.                        CERTAIN   FIRST   AMENDMENT
                                        DATED AS OF SEPTEMBER 10,
                                        1997, AS AMENDED BY THAT
By:_____              CERTAIN FIRST AMENDMENT
    Name:                               DATED APRIL 30, 2004
    Title:

                                        By:_____
                                            Robert J. Falcone, Trustee

CENTURY DANIEL'S LANDING, LLC           _____
CENTURY FALCON PARC, LLC
CENTURY FALCON PINES, LLC
CENTURY HAMMOCKS, LLC                   EDWARD FALCONE
CENTURY INDEPENDENCE, LLC
CENTURY LIVE OAK PRESERVE, LLC
CENTURY SAVANNAH PINES, LLC             _____
CENTURY SAVANNAH LANDING, LLC
CENTURY VICTORIA PINES LANDING, LLC     NEIL EISNER

By:  Century Communications of Florida, Inc.,
     its Managing Member

By:_____
    Name:
    Title:

207891-v3

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date set forth above.

PURCHASER:

BRIGHT HOUSE NETWORKS, LLC

By:_____
   Name:
   Title:

SELLERS:

CENTURY COMMUNICATIONS
OF FLORIDA, INC.

By:_____
   Name: Robert Falcone Pres
   Title:

CENTURY DANIEL'S LANDING, LLC
CENTURY FALCON PARC, LLC
CENTURY FALCON PINES, LLC
CENTURY HAMMOCKS, LLC
CENTURY INDEPENDENCE, LLC
CENTURY LIVE OAK PRESERVE, LLC
CENTURY SAVANNAH PINES, LLC
CENTURY SAVANNAH LANDING, LLC
CENTURY VICTORIA PINES LANDING, LLC

By:  Century Communications of Florida, Inc.,
    its Managing Member

By:_____
   Name: Robert J Falcone
   Title: Pres

GUARANTORS:

ARTHUR FALCONE AMENDED AND
RESTATED REVOCABLE LIVING
TRUST, DATED NOVEMBER 4, 2005

By:_____
   Arthur Falcone, Trustee

ROBERT J. FALCONE REVOCABLE
LIVING TRUST, DATED SEPTEMBER
1, 1993, AS AMENDED BY THAT
CERTAIN FIRST AMENDMENT
DATED AS OF SEPTEMBER 10,
1997, AS AMENDED BY THAT
CERTAIN FIRST AMENDMENT
DATED APRIL 30, 2004

By:_____
   Robert J. Falcone, Trustee

_____
EDWARD FALCONE

Neil Eisner BY ROBERT
NEIL EISNER J FALCONE HIS
    ATTORNEY IN FACT

207891-v3

# TRANSITION SERVICES AGREEMENT

TRANSITION SERVICES AGREEMENT (this "<u>Transition Services Agreement</u>"), dated May 30, 2008, by and between Bright House Networks, LLC, a Delaware limited liability company ("<u>Purchaser</u>") and Century Daniel's Landing, LLC, a Florida limited liability company ("<u>Daniels</u>"), Century Falcon Pines, LLC, a Florida limited liability company ("<u>Falcon Pines</u>"), Century Hammocks, LLC, a Florida limited liability company ("<u>Hammocks</u>"), Century Independence, LLC, a Florida limited liability company ("<u>Independence</u>"), Century Live Oak Preserve, LLC, a Florida limited liability company ("<u>Live Oak</u>"), Century Savannah Pines, LLC, a Florida limited liability company ("<u>Savannah Pines</u>"), Century Savannah Landing, LLC, a Florida limited liability company ("<u>Savannah Landing</u>"), Century Victoria Pines Landing, LLC, a Florida limited liability company ("<u>Victorian Pines</u>" and collectively with Daniels, Falcon Pines, Hammocks, Independence, Live Oak, Savannah Pines and Savannah Landing, the "<u>Limited Liability Companies</u>") and Century Communications of Florida, Inc., a Florida corporation ("<u>Managing Member</u>" and collectively with the Limited Liability Companies, "<u>Sellers</u>" and each individually, a "<u>Seller</u>"). Capitalized terms used but not otherwise defined herein shall have the meaning ascribed thereto in the Asset Purchase Agreement (as defined below).

## W I T N E S S E T H :

WHEREAS, Purchaser and Sellers are parties to an Asset Purchase Agreement dated as of February 21, 2008 (the "<u>Asset Purchase Agreement</u>"), providing for, among other things, the conveyance, sale, transfer, assignment and delivery to Purchaser of the Assets in connection with the Systems and the assumption of the Assumed Liabilities by Purchaser in connection with the Systems;

WHEREAS, in connection with the acquisition of the Assets, Purchaser desires that Sellers provide certain transition services (as more fully described herein) to Purchaser in connection with Purchaser's operation of the Systems for a limited period of time following the Closing; and

WHEREAS, Sellers are willing to provide to Purchaser the transition services set forth herein on the terms and subject to the conditions hereof.

NOW, THEREFORE, in consideration of the mutual agreements and covenants herein contained and intending to be legally bound hereby, the parties agree as follows:

## ARTICLE I
## SERVICES TO BE PERFORMED

Section 1.1      <u>Services</u>.  In accordance with the terms and provisions of this Transition Services Agreement, Sellers agree to perform or cause to be performed for Purchaser (i) the transition services described on <u>Annex A</u> hereto (each a "<u>Service</u>" and collectively, the "<u>Transition Services</u>" or the "<u>Services</u>") for the time period and to the extent specified in this Transition Services Agreement and in such Annex. At its option, Sellers may cause any Service

they are required to provide hereunder to be provided by one of their affiliates or by any other person or entity that is providing, the same or similar services to Sellers or any of their affiliates.

Section 1.2     Agreement Limited to Services Covered.   Purchaser expressly acknowledges and agrees that the obligation of Sellers to provide the Services following the Closing is limited to the Services set forth on Annex A hereto or as the parties otherwise agree in writing.   In the event that the Purchaser requests additional services, Sellers shall only be obligated to perform such services as mutually agreed by the parties in writing.

Section 1.3     Standard of Services.   Without limiting any other provision of this Transition Services Agreement, unless otherwise agreed by the parties in writing, Sellers shall provide the Services (i) at substantially the same level and quality as was the practice of Sellers in the operation of the Systems during the one (1) year period immediately prior to the Closing Date and (ii) in a time frame consistent with Sellers' practices during such period.

Section 1.4     Cooperation. Without limiting or expanding any other provision of this Transition Services Agreement, the parties shall use commercially reasonable efforts to cooperate with each other in all matters relating to the provision and receipt of the Services and the transition process.

Section 1.5     Contact Party; Transition Coordinator.   For each Service set forth on Annex A hereto, there shall be a designated contact person for each Seller and Purchaser, respectively (the "Contact Persons").   Annex A shall set forth the names and telephone numbers of such Contact Persons initially designated to be responsible for such Service.   In addition, Sellers and Purchaser shall designate their respective transition coordinators (the "Transition Coordinators") who will be responsible for overseeing the transition process.   Annex A shall set forth the name and telephone number of the persons initially designated by Sellers and Purchaser to be the Transition Coordinators for each of Sellers and Purchaser, respectively.   Each party may provide notification in accordance with Section 7.7 of any modification to the designation of the foregoing contact persons.

Section 1.6     No Transfer of Control.   Without in any way limiting Sellers' obligations hereunder to Purchaser, the parties acknowledge and agree that all Services to be rendered by Sellers hereunder are to support Purchaser's operation of the Systems, which business is subject to the supervision, approval and ultimate control of Purchaser. Nothing in this Transition Services Agreement will be considered to transfer *de jure* or *de facto* control of the Systems from Purchaser to Sellers.

## ARTICLE II
## TERM AND TERMINATION

Section 2.1     Term.

. (a)     The term of this Transition Services Agreement shall commence on the Closing and shall terminate with respect to each Service as specified on Annex A hereto or earlier as provided by Section 2.1(b) below (the "Expiration Date"), and this Transition Services Agreement shall terminate in its entirety at the expiration of the longest service term provided for in Annex A, provided, however, that, (i) in the event of any termination of this Transition

2

Services Agreement, this Transition Services Agreement (other than all sections of Articles V and VI and as set forth in clause (ii) below) shall be of no further force or effect with no liability on the part of any party hereto; and (ii) subject to the terms of this Transition Services Agreement, no such termination shall relieve any party hereto from liability for any breach of this Transition Services Agreement prior to termination thereof, including, without limitation, any failure to satisfy payment obligations with respect to any Services.

(b)     The parties agree that if Purchaser chooses to discontinue any Service prior to its Expiration Date, then Purchaser shall give Sellers at least fifteen (15) days (or such other period as may be specified on Annex A hereto) prior written notice of its election to terminate this Transition Services Agreement as to that particular Service. Purchaser shall pay Sellers the fees and costs of any terminated Service up until the effective date of termination. As to any particular Service, notice of early termination shall be provided in writing to Sellers in accordance with Section 7.7 herein and to Sellers' Transition Coordinator as designated on Annex A.

Section 2.2     Termination.   Notwithstanding anything to the contrary contained herein, this Transition Services Agreement may be terminated, in whole or in part, at any time:

(a)     by the mutual consent of Purchaser and Sellers;

(b)     by either Sellers or Purchaser (provided that the terminating party is not then in material breach of any covenant or other agreement contained herein), if there shall have been a material breach of any of the provisions of this Transition Services Agreement by the other party; provided, that (i) such breach has not been waived in writing by the terminating party; and (ii) such breach has not been cured within thirty (30) days following the terminating party's written notice of such breach;

(c)     by Sellers, ten (10) days following notice to Purchaser, if Purchaser fails to pay any invoice for Services within thirty (30) days of the date such invoice is received; provided that if all or any portion of an invoice is in dispute, Sellers shall not have the right to terminate this Agreement so long as Purchaser pays the portion of such invoice which is not in dispute and the balance, if any, upon resolution of such dispute;

(d)     by either Sellers or Purchaser, immediately, upon written notice to Purchaser or Sellers, respectively, if the other party files a proceeding in bankruptcy, receivership or reorganization, or for composition, liquidation or dissolution or for similar relief, or if there is a filing against such party of any such proceeding which is not dismissed within fifteen (15) days after the filing thereof; or

(e)     as provided in Section 7.4 hereof.

### ARTICLE III
### FEES AND COSTS

Section 3.1     Basic Fees and Costs.   In consideration for the Services to be provided by Sellers hereunder, Purchaser shall pay to Sellers such fees and costs for each specified Service as set forth in Annex A hereto and such other fees, costs and expenses as otherwise set forth in

3

this Agreement. Unless otherwise provided herein, all payments required to be made pursuant to this Transition Services Agreement shall be made in U.S. dollars in the form of cash or by wire transfer of immediately available funds to an account designated by the party receiving such payment.

Section 3.2    Invoices. Sellers shall invoice Purchaser on a monthly basis, which invoice shall itemize in reasonable detail the basis for each invoice amount, the Services rendered and the calculation of charges for each of the Services rendered. Purchaser shall pay all amounts on each invoice that are due and payable within thirty (30) days following receipt thereof. All charges are exclusive of applicable taxes, and tax-related surcharges, which Purchaser agrees to pay. If Purchaser disputes in good faith any item on any invoice submitted to it by Sellers, it will pay when due the undisputed portion of such invoice, and Purchaser and Sellers shall proceed in good faith to resolve all matters concerning the disputed portion. If Purchaser provides Sellers with a duly authorized exemption certificate, Sellers will exempt Purchaser in accordance with law, effective on the date Sellers receive the exemption certificate. Taxes based on Sellers' net income will be Sellers' sole responsibility. Late payments shall bear interest at the lower of one and one-half percent (1.5%) per month or the highest rate allowed by applicable law. Purchaser shall be liable for the payment of all fees and expenses, including attorney's fees, reasonably incurred in collecting, or attempting to collect, any undisputed charges owed hereunder.

## ARTICLE IV
## EMPLOYEES

Section 4.1    Purchaser Employees. Employees of Purchaser involved in the receipt of the Services shall remain employees of Purchaser, and Purchaser shall be solely responsible for the payment and provision of all wages, bonuses, commissions and employee benefit plans, programs or arrangements relating to such employees.

Section 4.2    Sellers' Employees. Employees of Sellers or their Affiliates involved in the provision and administration of the Services shall remain employees of Sellers or their Affiliates, and Sellers shall be solely responsible for the payment and provision of all wages, bonuses, commissions and employee benefit plans, programs or arrangements relating to such employees.

## ARTICLE V
## INDEMNITY AND WARRANTY DISCLAIMER

Section 5.1    Indemnification by Purchaser. Purchaser shall defend, indemnify and hold harmless Sellers and their Affiliates and each of their respective directors, officers, equity holders, partners and employees and their heirs, successors and assigns (collectively, the "Sellers' Indemnified Parties") from and against any judgments, fines, claims, damages, assessments, obligations liabilities, costs and expenses (including, without limitation, reasonable attorneys' fees) ("Losses") imposed on or suffered by any of the Sellers Indemnified Parties in connection with or arising out of the Services performed or to be performed under this Agreement except to the extent such Losses are attributable to Sellers' gross negligence, willful misconduct or

4

violation of any Legal Rules in its provision of the Services, or any breach of this Agreement by Sellers.

Section 5.2    Indemnification by Sellers.  Sellers shall defend, indemnify and hold harmless Purchaser and its affiliates and each of their respective directors, officers, equity holders, partners and employees and their heirs, successors and assigns (collectively, the "Purchaser Indemnified Parties") from and against any Losses imposed on or suffered by any of the Purchaser Indemnified Parties attributable to Sellers' gross negligence, willful misconduct or violation of any Legal Rules in their provision of the Services, or any breach of this Agreement by Sellers.

Section 5.3    Claim Procedures.  The claim procedures set forth in Section 10.3 of the Purchase Agreement are hereby incorporated by reference and shall be applicable to any claims pursuant to this Article V.

## ARTICLE VI
## WARRANTY DISCLAIMER

OTHER THAN THE PROVISIONS OF SECTION 1.3 HEREOF, SELLERS MAKE NO WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, WITH REGARD TO ANY OF THE TRANSITION SERVICES INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTIES OF MERCHANTABILITY AND IMPLIED WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE. PURCHASER ACKNOWLEDGES THAT IT HAS NOT ENTERED INTO THIS AGREEMENT IN RELIANCE UPON ANY SUCH WARRANTY OR REPRESENTATION.

## ARTICLE VII
## MISCELLANEOUS

Section 7.1    Confidentiality.  Each party acknowledges that the other possesses, and will continue to possess, information that has been created, discovered or developed by them and/or in which property rights have been assigned or otherwise conveyed to them, which information has commercial value and is not in the public domain ("Confidential Information"). The Confidential Information of each party will be and remain the sole property of such party and its assigns. Each party shall use the same degree of care that it normally uses to protect its own Confidential Information to prevent the disclosure to third parties of Confidential Information of the other party. Neither party shall make any use of the Confidential Information of the other except as contemplated or required by the terms of this Agreement. Notwithstanding the foregoing, this Section shall not apply to any information that a party can demonstrate (a) was, at the time of disclosure to it, in the public domain through no fault of such party; (b) was received after disclosure to it from a third party who had a lawful right to disclose such information to it; (c) was independently developed by the receiving party or (d) which such party is compelled by Legal Rules to disclose in the written opinion of its counsel (as shall be provided to the other party) provided that such party has used commercially reasonable efforts to obtain, and has afforded the other party the opportunity to obtain, an appropriate protective order or other satisfactory assurance of confidential treatment for the information compelled to be disclosed.

5

Section 7.2     _Limitation of Liability_. SELLERS SHALL NOT BE LIABLE TO PURCHASER FOR ANY LOST PROFITS OR INDIRECT, SPECIAL, CONSEQUENTIAL, INCIDENTAL OR PUNITIVE DAMAGES, WHETHER BASED ON BREACH OF CONTRACT, TORT (INCLUDING NEGLIGENCE), OR ANY OTHER LEGAL THEORY.

Section 7.3     _Relationship of Parties_. Nothing contained in this Transition Services Agreement shall be construed as creating a partnership, joint venture, agency, trust, single or joint employer relationship, employer-employee relationship, or other association of any kind, each party being individually responsible only for its obligations as set forth in this Transition Services Agreement.

Section 7.4     _Force Majeure_. Neither party shall be liable to the other party for any delay in performing or for any failure to perform any of its obligations hereunder (other than the obligation of Purchaser to pay money to Sellers for Services performed in accordance with the terms hereof), due to an event of force majeure, including, but not limited to, acts of God or the public enemy, natural disasters, acts of terrorism, riots, wars, explosions, strikes and labor disputes, interruption of supply, inability to obtain fuel, power, materials, equipment or supplies or delivery, freight or transportation services, any law, order, rule or regulation or any other cause beyond the reasonable control of such party or which such party is unable to overcome by the use of reasonable measures or which such party is able to overcome only at substantial expense. If any event of force majeure occurs, the party whose performance is hindered thereby shall promptly give notice thereof to the other party. If any event of force majeure continues for a period of ten (10) or more consecutive days, the party who was to receive the performance may terminate this Transition Services Agreement upon fifteen (15) days' prior written notice to the other party.

Section 7.5     _Assignments_. Except as otherwise set forth in this Agreement, neither this Transition Services Agreement nor any of the rights, interests or obligations hereunder shall be transferred, assigned or delegated by either of the parties hereto, in whole or in part, without the prior written consent of the other party, and any attempt to make any such transfer, assignment or delegation without such consent shall be null and void; provided, however, that, without the consent of Purchaser, Sellers may (in whole or in part) transfer, assign and delegate its rights, interests and obligations to one or more affiliates or successors of Sellers, provided that Sellers remain liable for their obligations hereunder.

Section 7.6     _Descriptive Headings_. The descriptive headings herein are inserted for convenience only and are not intended to be part of or to affect the meaning or interpretation of this Transition Services Agreement.

Section 7.7     _Notices_. Any notices or other communications required or permitted under, or otherwise in connection with this Transition Services Agreement shall be in writing and delivered in person, by facsimile (provided the sender receives written confirmation of receipt when transmitted by facsimile transmission), by registered or certified mail, postage prepaid and return receipt requested, or by national overnight courier, in each case to the address for the recipient set forth below (or to such other address which has been delivered in accordance with this Section 7.7). Each notice shall be deemed effective upon its receipt or refusal.

6

(a)   If to Purchaser, to:

Bright House Networks, LLC
c/o Advance/Newhouse Partnership
5000 Campuswood Drive
East Syracuse, New York 13057
Attention:    Mr. Steven A. Miron
Facsimile:    (315) 463-4127

With a copy to:

Sabin, Bermant & Gould LLP
Four Times Square
New York, NY 10036
Attention:    Andrew P. Kransdorf, Esq
Facsimile:    (212) 381-7226

(b)   If to Sellers, to:

The Falcone Group, LLC
1951 NW 19th Street, Suite 200
Boca Raton, FL 33431
Attention:    Mr. Robert Falcone
                   and
              Anthony Morrison, Esq.
              Chief Legal Officer
Facsimile:    (561) 961-1875

With a copy to:

Nason, Yeager, Gerson, White & Lioce P.A.
1645 Palm Beach Lakes Boulevard, Suite 1200
West Palm Beach, FL 33401
Attention:    John White, III, Esq.
Facsimile:    (561) 686-5442

Section 7.8      Counterparts: Facsimile Signatures.   This Transition Services Agreement may be executed in counterparts, each of which shall be deemed an original, but both of which together shall constitute one and the same agreement. Any signature delivered by a party by electronic or facsimile transmission shall be deemed to be an original signature hereto.

Section 7.9      Entire Agreement.   This Transition Services Agreement constitutes the entire agreement of the parties hereto, and supersedes all prior agreements and understandings, both written and oral, between the parties with respect to the subject matter hereof.

Section 7.10     Governing Law: Venue.   This Transition Services Agreement shall be governed by the laws of the State of Florida (regardless of the laws that might otherwise govern under applicable principles of conflicts of law) as to all matters, including matters of validity,

7

construction, effect, performance and remedies. The prevailing party shall be entitled to the reimbursement from the other party of all costs and expenses incurred, if any, including attorney's fees, to enforce its rights and remedies hereunder.

Section 7.11    Amendment and Modification. This Transition Services Agreement may be amended or modified at any time by Sellers and Purchaser, but only by an instrument in writing signed by or on behalf of each of Sellers and Purchaser.

Section 7.12    WAIVER OF JURY TRIAL. EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS TRANSITION SERVICES AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

Section 7.13    Right to Specific Performance; Remedies. The parties recognize that in the event a party hereto should refuse to perform under the provisions of this Agreement, monetary damages alone may not be adequate. The nonbreaching party shall therefore be entitled, in addition to any other remedies which may be available, including money damages to the extent available hereunder, to seek specific performance of the terms of this Agreement. In the event of any action to enforce this Agreement, the breaching party hereby waives the defense that there is an adequate remedy under any Legal Requirement.

Section 7.14    Parties in Interest. This Transition Services Agreement shall be binding upon and inure solely to the benefit of each party hereto and their respective successors and permitted assigns, and nothing in this Transition Services Agreement, express or implied, is intended to or shall confer upon any other Person any rights, interests, benefits or remedies of any nature whatsoever under or by reason of this Transition Services Agreement.

Section 7.15    No Fiduciary Relationship. Purchaser understands and accepts that no fiduciary relationship arises by virtue of this Transition Services Agreement and that, accordingly, Sellers incur none of the obligations that arise in such relationship as an incident of its fulfilling its obligations under this Transition Services Agreement. Further, Purchaser understands and accepts that Sellers neither insure the profits for Purchaser nor guarantee the success of Purchaser's business as a result of Purchaser's receipt of services under this Transition Services Agreement.

Section 7.16    Interpretation. In the event of an ambiguity or question of intent or interpretation arises, this Transition Services Agreement shall be construed as if drafted jointly by the parties and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any provisions of this Transition Services Agreement.

Section 7.17    Service Marks, Trademarks and Name. Neither Sellers nor Purchaser shall, other than as specifically contemplated herein or in the Asset Purchase Agreement: (a) use any service mark or trademark of the other party; or (b) refer to the other party in connection with any tariff filings or any billing statements or other communications or notices of any kind published, distributed or made available to end users or other third parties or in any advertising, promotion, press release or publication unless it obtains the other party's prior written consent. In addition to other applicable remedies, the parties hereto shall be entitled to seek injunctive relief

8

with respect to any violation of this section. Any opportunity to cure a breach of this section shall be subject to the non-breaching party's reasonable satisfaction as to the curability of the original injury caused by such breach and the effectiveness of any attempted cure. A party's right to enforce this section as a material provision of this Transition Services Agreement shall not in any manner require a showing of financial, legal or other loss or injury to such party of any kind.

Section 7.18    <u>Severability</u>. In the event that any one or more of the provisions contained herein, or the application thereof in any circumstances, is held invalid, illegal or unenforceable in any respect for any reason, the parties shall negotiate in good faith with a view to the substitution therefor of a suitable and equitable solution in order to carry out, so far as may be valid and enforceable, the intent and purpose of such invalid provision; provided, however, that the validity, legality and enforceability of any such provision in every other respect and of the remaining provisions contained herein shall not be in any way impaired thereby, it being intended that all of the rights and privileges of the parties hereto shall be enforceable to the fullest extent permitted by law.

[Signature Page Follows]

9

IN WITNESS WHEREOF, the parties hereto have executed this Transition Services Agreement as of the date first written above.

Purchaser:

BRIGHT HOUSE NETWORKS, LLC


By:_____
        Name:
        Title:


Sellers:

CENTURY COMMUNICATIONS
OF FLORIDA, INC.


By:_____
        Name: Robert J. Falcone
        Title:  President

CENTURY DANIEL'S LANDING, LLC
CENTURY FALCON PINES, LLC
CENTURY HAMMOCKS, LLC
CENTURY INDEPENDENCE, LLC
CENTURY LIVE OAK PRESERVE, LLC
CENTURY SAVANNAH PINES, LLC
CENTURY SAVANNAH LANDING, LLC
CENTURY VICTORIA PINES LANDING, LLC

By:     Century Communications of Florida, Inc., its
        Managing Member


By:_____
        Name: Robert J. Falcone
        Title:  President

H:\7259\19533\DTransitionServicesFinalAgreement-1BAP/ssm

10

## ANNEX A

## TRANSITION SERVICES

**Services and Migration.**

Buyer currently has or is building and deploying infrastructure, or otherwise entering into agreements with one or more third parties to supply services based upon third party infrastructure. When such infrastructure is able to be deployed to support the Systems and all data, email and webmail addresses relevant to a service has been transferred, the service will be considered migrated. Sellers shall provide all reasonable assistance and cooperation to Buyer as may be required in connection with the migration of each of the services.

Buyer agrees to consult with Sellers in advance on all planned customer notifications, promotions, changes to operational processes or other actions which may reasonably be expected to result in an increase in the volume of activity for any of the services described below.

Service Terms begin on the Closing Date unless otherwise noted and ends on the date specified under the Service Term column below.

| Item | Service | Service Term | Fee |
|------|---------|--------------|-----|
| A | Provide the use of all Headend Equipment, programming, high speed lines, and security monitoring | 30 days from Closing Date or when Bright House's interconnection is complete, whichever occurs first | Free of charge |
| B | Provide billing services | 30 days from Closing Date or when Bright House's interconnection is complete, whichever occurs first | Free of charge |
| C | Provide support installation, field service & call center | 30 days from Closing Date or when Bright House's interconnection is complete, whichever occurs first | Free of charge |
| D | Provide e-mail forwarding | 60 days from Closing Date | Free of charge |
| E | Provide home monitoring field support specialist | 60 days from Closing Date or until Bright House hires a home monitoring field support specialist, whichever occurs first | Free of charge |
| F | Provide services covered by the EF License | 180 days from Closing Date or until Bright House becomes qualified under an EF License, whichever occurs first | $1,250 per month |
| G | | | |
| H | | | |
| I | | | |
| J | | | |
| K | | | |

Jun. 30. 2009 12:16PM   NYG  L, P. A.

No. 1029   P. 82/82

| Item | Service | Service Term | Fee |
|------|---------|--------------|-----|
| L | | | |
| M | | | |
| N | | | |
| O | | | |
| P | | | |
| Q | | | |
| R | | | |
| S | | | |
| T | | | |
| U | | | |
| V | | | |
| W | | | |

**Seller Transition Coordinator**

Name:          Robert J. Falcone
Telephone:     561-961-1314
E-Mail         BobF@FalconeGroup.info

**Buyer Transition Coordinator**

Name:
Telephone:
E-Mail

and

Name:
Telephone:
E-Mail

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION

CASE NO: _____

CENTURY COMMUNICATIONS OF FLORIDA, INC.,
A Florida corporation, CENTURY DANIEL'S LANDING,
LLC, a Florida limited liability company, CENTURY
FALCON PARC, LLC, a Florida limited liability company,
CENTURY FALCON PINES, LLC, a Florida limited liability
Company, CENTURY HAMMOCKS, LLC, a
Florida limited liability company, CENTURY
INDEPEDENDENCE, LLC, a Florida limited liability
Company, CENTURY LIVE OAK PRESERVE, LLC, a Florida
Limited liability company, CENTURY SAVANNAH PINES,
LLC, a Florida limited liability company, CENTURY
SAVANNAH LANDINGS, LLC, a Florida limited
Liability company and CENTURY VICTORIA PINES
LANDINGS, LLC, a Florida limited liability company,

      Plaintiffs,

v.

BRIGHT HOUSE NETWORKS, LLC,
a Delaware limited liability company,

      Defendant.

_____/

## DECLARATION OF MICHAEL WILBUR
## IN SUPPORT OF NOTICE OF REMOVAL

Michael Wilbur declares, pursuant to 28 U.S.C. § 1746:

1.     I am over the age of 18 and the information contained herein is based upon personal knowledge.

2.     I am the Vice President of Corporate Finance of Advance/Newhouse Partnership ("Advance/Newhouse").

3.     Advance/Newhouse, a partnership duly organized under the laws of the State of New York with its principal place of business in New York. No partner of Advance/Newhouse is a citizen of Florida.

RM:6633897:1


EXHIBIT
B

4.     Advance/Newhouse is a general partner of Time Warner Entertainment-Advance/Newhouse Partnership ("TWE-A/N") and the sole manager of Bright House Networks, LLC.

5.     Bright House Networks, LLC ("Bright House") is a limited liability company duly organized under the laws of the State of Delaware with its principal place of business in New York.

6.     TWE-A/N is the sole member of Bright House.

7.     TWE-A/N is a partnership duly organized under the laws of the State of New York with its principal place of business in New York.

8.     No partner of TWE-A/N is a citizen of the State of Florida.

   a.     In addition to Advance/Newhouse, the partners of TWE-A/N are: (1) Time Warner Entertainment Co., L.P. and (2) Time Warner NY Cable, LLC.

   b.     Time Warner Entertainment Co., L.P. is a limited partnership duly organized under the laws of the State of Delaware with its principal place of business in New York. No partner of Time Warner Entertainment Co., L.P. is a citizen of Florida.

   c.     Time Warner NY Cable, LLC is limited liability company duly organized under the laws of the State of Delaware with its principal place of business in North Carolina. No member of Time Warner NY Cable, LLC is a citizen of Florida.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 29 2009 in Syracuse , New York .

MICHAEL WILBUR

RM:6633897:1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION

CASE NO: _____

CENTURY COMMUNICATIONS OF FLORIDA, INC.,
A Florida corporation, CENTURY DANIEL'S LANDING,
LLC, a Florida limited liability company, CENTURY
FALCON PARC, LLC, a Florida limited liability company,
CENTURY FALCON PINES, LLC, a Florida limited liability
Company, CENTURY HAMMOCKS, LLC, a
Florida limited liability company, CENTURY
INDEPEDENDENCE, LLC, a Florida limited liability
Company, CENTURY LIVE OAK PRESERVE, LLC, a Florida
Limited liability company, CENTURY SAVANNAH PINES,
LLC, a Florida limited liability company, CENTURY
SAVANNAH LANDINGS, LLC, a Florida limited
Liability company and CENTURY VICTORIA PINES
LANDINGS, LLC, a Florida limited liability company,

     Plaintiffs,

v.

BRIGHT HOUSE NETWORKS, LLC,
a Delaware limited liability company,

     Defendant.

_____/

## DECLARATION OF ELLIOT A. HALLAK, ESQ. IN SUPPORT OF NOTICE OF REMOVAL

Elliot A. Hallak, Esq. declares, pursuant to 28 U.S.C. § 1746:

1.    I am over the age of 18 and the information contained herein is based upon personal knowledge.

2.    I am an attorney licensed to practice law in the State of Florida and an associate of the law firm of Ruden, McClosky, Smith, Schuster & Russell, P.A., counsel for Defendant, Bright House Networks, LLC.

3.    The documents attached hereto as Composite Exhibit "1", are records maintained by the Florida Department of State, Divisions of Corporations relative to each Plaintiff to this action.



EXHIBIT
C

4.    I obtained the documents attached hereto as Composite Exhibit "1" from the on-line records maintained by the Florida Department of State, Divisions of Corporations.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 30, 2009 in West Palm Beach, Florida.

_____
ELLIOT A. HALLAK, ESQ.

## FLORIDA DEPARTMENT OF STATE
## DIVISION OF CORPORATIONS

| Home | Contact Us | E-Filing Services | Document Searches | Forms | H |

Previous on List    Next on List    Return To List    Entity Na

Events    No Name History    Su

# Detail by Entity Name

## Florida Profit Corporation

CENTURY COMMUNICATIONS OF FLORIDA, INC.

## Filing Information

| | |
|---|---|
| **Document Number** | P98000067899 |
| **FEI/EIN Number** | 650854399 |
| **Date Filed** | 08/04/1998 |
| **State** | FL |
| **Status** | ACTIVE |
| **Last Event** | REINSTATEMENT |
| **Event Date Filed** | 10/31/2001 |
| **Event Effective Date** | NONE |

## Principal Address

1951 NW 19TH STREET
SUITE 100
BOCA RATON FL 33431

Changed 03/20/2009

## Mailing Address

1951 NW 19TH STREET
SUITE 100
BOCA RATON FL 33431

Changed 03/20/2009

## Registered Agent Name & Address

ROBERT, FALCONE
1951 NW 19TH STREET
SUITE 100
BOCA RATON FL 33431 US

Name Changed: 03/20/2009

Address Changed: 03/20/2009

## Officer/Director Detail

**Name & Address**



EXHIBIT

Title DP

FALCONE, ROBERT
1951 NW 19TH STREET
BOCA RATON FL 33431

Title DVP

FALCONE, EDWARD
1951 NW 19TH STREET
BOCA RATON FL 33431

Title DST

FALCONE, ARTHUR
1951 NW 19TH STREET
BOCA RATON FL 33431

## Annual Reports

| Report Year | Filed Date |
|---|---|
| 2007 | 03/19/2007 |
| 2008 | 05/15/2008 |
| 2009 | 03/20/2009 |

## Document Images

| | |
|---|---|
| 03/20/2009 -- ANNUAL REPORT | View image in PDF format |
| 05/15/2008 -- ANNUAL REPORT | View image in PDF format |
| 03/19/2007 -- ANNUAL REPORT | View image in PDF format |
| 03/13/2006 -- ANNUAL REPORT | View image in PDF format |
| 04/29/2005 -- ANNUAL REPORT | View image in PDF format |
| 04/30/2004 -- ANNUAL REPORT | View image in PDF format |
| 04/28/2003 -- ANNUAL REPORT | View image in PDF format |
| 03/20/2002 -- ANNUAL REPORT | View image in PDF format |
| 10/31/2001 -- REINSTATEMENT | View image in PDF format |
| 05/25/2000 -- REINSTATEMENT | View image in PDF format |
| 08/04/1998 -- Domestic Profit | View image in PDF format |

**Note:** This is not official record. See documents if question or conflict.

Previous on List    Next on List    Return To List

Events    No Name History

Entity Na

Su

| Home | Contact us | Document Searches | E-Filing Services | Forms | Help |

Copyright and Privacy Policies
Copyright © 2007 State of Florida, Department of State.

# FLORIDA DEPARTMENT OF STATE
# DIVISION OF CORPORATIONS

*Sunbiz*

| Home | Contact Us | E-Filing Services | Document Searches | Forms | H |

Previous on List    Next on List    Return To List

Events    No Name History

Entity Na

Su

# Detail by Entity Name

## Florida Limited Liability Company

CENTURY DANIEL'S LANDING, LLC

## Filing Information

| | |
|---|---|
| Document Number | L02000034653 |
| FEI/EIN Number | 341975087 |
| Date Filed | 12/24/2002 |
| State | FL |
| Status | ACTIVE |
| Last Event | LC AMENDMENT |
| Event Date Filed | 11/28/2007 |
| Event Effective Date | NONE |

## Principal Address

1951 NW 19TH STREET
SUITE 200
BOCA RATON FL 33431

Changed 04/29/2005

## Mailing Address

1951 NW 19TH STREET
SUITE 200
BOCA RATON FL 33431

Changed 04/29/2005

## Registered Agent Name & Address

ROBERT, FALCONE
1951 NW 19TH STREET
SUITE 200
BOCA RATON FL 33431 US

Name Changed: 03/30/2009

Address Changed: 04/29/2005

## Manager/Member Detail

**Name & Address**

Title MGRM

EISNER, NEIL
3300 UNIVERSITY DR STE 001
POMPANO BEACH FL 33065

Title MGRM

FALCONE, ART
1951 NW 19TH STREET
BOCA RATON FL 33431

## Annual Reports

| Report Year | Filed Date |
|-------------|------------|
| 2007 | 03/28/2007 |
| 2008 | 06/03/2008 |
| 2009 | 03/30/2009 |

## Document Images

| | |
|---|---|
| 03/30/2009 -- ANNUAL REPORT | View image in PDF format |
| 06/03/2008 -- ANNUAL REPORT | View image in PDF format |
| 11/28/2007 -- LC Amendment | View image in PDF format |
| 03/28/2007 -- ANNUAL REPORT | View image in PDF format |
| 03/13/2006 -- ANNUAL REPORT | View image in PDF format |
| 04/29/2005 -- ANNUAL REPORT | View image in PDF format |
| 04/30/2004 -- ANNUAL REPORT | View image in PDF format |
| 05/02/2003 -- ANNUAL REPORT | View image in PDF format |
| 12/24/2002 -- Florida Limited Liabilites | View image in PDF format |

**Note:** This is not official record. See documents if question or conflict.

| Previous on List | Next on List | Return To List | | Entity Na |
|---|---|---|---|---|
| Events | No Name History | | | Su |

| Home | Contact us | Document Searches | E-Filing Services | Forms | Help |

Copyright and Privacy Policies
Copyright © 2007 State of Florida, Department of State.



| Home | Contact Us | E-Filing Services | Document Searches | Forms | H |

Previous on List    Next on List    **Return To List**      Entity Na

Events    No Name History      Su

# Detail by Entity Name

## Florida Limited Liability Company

CENTURY FALCON PARC, LLC

## Filing Information

| | |
|---|---|
| **Document Number** | L05000032009 |
| **FEI/EIN Number** | 202601518 |
| **Date Filed** | 03/31/2005 |
| **State** | FL |
| **Status** | ACTIVE |
| **Last Event** | LC AMENDMENT |
| **Event Date Filed** | 11/27/2007 |
| **Event Effective Date** | NONE |

## Principal Address

1951 NW 19TH STREET
200
BOCA RATON FL 33431

Changed 03/14/2006

## Mailing Address

1951 NW 19TH STREET
200
BOCA RATON FL 33431

Changed 03/14/2006

## Registered Agent Name & Address

ROBERT, FALCONE
1951 NW 19THSTREET
SUITE 200
BOCA RATON FL 33431 US

Name Changed: 03/30/2009

Address Changed: 03/30/2009

## Manager/Member Detail

**Name & Address**

Title MGRM

FALCONE, ARTHUR
1951 NW 19TH STREET
BOCA RATON FL 33431

Title MGRM

FALCONE, EDWARD
1951 NW 19TH STREET
BOCA RATON FL 33431

Title MGRM

FALCONE, ROBERT
1951 NW 19TH STREET
BOCA RATON FL 33431

## Annual Reports

| Report Year | Filed Date |
|---|---|
| 2007 | 03/28/2007 |
| 2008 | 06/03/2008 |
| 2009 | 03/30/2009 |

## Document Images

| | |
|---|---|
| 03/30/2009 -- ANNUAL REPORT | View image in PDF format |
| 06/03/2008 -- ANNUAL REPORT | View image in PDF format |
| 11/27/2007 -- LC Amendment | View image in PDF format |
| 03/28/2007 -- ANNUAL REPORT | View image in PDF format |
| 03/14/2006 -- ANNUAL REPORT | View image in PDF format |
| 03/31/2005 -- Florida Limited Liabilites | View image in PDF format |

**Note:** This is not official record. See documents if question or conflict.

**Previous on List**      **Next on List**      **Return To List**                    Entity Na

**Events**                    No Name History                                          Su

| Home | Contact us | Document Searches | E-Filing Services | Forms | Help |

Copyright and Privacy Policies
Copyright © 2007 State of Florida, Department of State.

FLORIDA DEPARTMENT OF STATE
DIVISION OF CORPORATIONS

| Home | Contact Us | E-Filing Services | Document Searches | Forms | H |

Previous on List     Next on List     Return To List                      Entity Na

Events            No Name History                                          Su

# Detail by Entity Name

## Florida Limited Liability Company

CENTURY FALCON PINES, LLC

## Filing Information

| | |
|---|---|
| **Document Number** | L06000054500 |
| **FEI/EIN Number** | 204964015 |
| **Date Filed** | 05/25/2006 |
| **State** | FL |
| **Status** | ACTIVE |
| **Last Event** | LC AMENDMENT |
| **Event Date Filed** | 11/27/2007 |
| **Event Effective Date** | NONE |

## Principal Address

1951 NW 19TH STREET, STE. 200
BOCA RATON FL 33431

Changed 06/03/2008

## Mailing Address

1951 NW 19TH STREET, STE. 200
BOCA RATON FL 33431

## Registered Agent Name & Address

ROBERT, FALCONE
1951 NW 19TH STREET
SUITE 200
BOCA RATON FL 33431 US

Name Changed: 03/30/2009

Address Changed: 03/30/2009

## Manager/Member Detail

**Name & Address**

Title MGRM

FALCONE, ARTHUR J
1951 NW 19TH ST SUITE 200

BOCA RATON FL 33431

Title MGRM

FALCONE, EDWARD
1951 NW 19TH ST SUITE 200
BOCA RATON FL 33431

Title MGRM

FALCONE, ROBERT
1951 NW 19TH ST SUITE 200
BOCA RATON FL 33431

## Annual Reports

| Report Year | Filed Date |
|-------------|------------|
| 2007 | 04/09/2007 |
| 2008 | 06/03/2008 |
| 2009 | 03/30/2009 |

## Document Images

| | |
|---|---|
| 03/30/2009 -- ANNUAL REPORT | View image in PDF format |
| 06/03/2008 -- ANNUAL REPORT | View image in PDF format |
| 11/27/2007 -- LC Amendment | View image in PDF format |
| 04/09/2007 -- ANNUAL REPORT | View image in PDF format |
| 05/25/2006 -- Florida Limited Liability | View image in PDF format |

**Note:** This is not official record. See documents if question or conflict.

Previous on List    Next on List    Return To List                    Entity Na

Events                 No Name History                                   St

| Home | Contact us | Document Searches | E-Filing Services | Forms | Help |
Copyright and Privacy Policies
Copyright © 2007 State of Florida, Department of State.

**FLORIDA DEPARTMENT OF STATE**
**DIVISION OF CORPORATIONS**

| Home | Contact Us | E-Filing Services | Document Searches | Forms | H |

| Previous on List | Next on List | Return To List | | Entity Na |
| Events | No Name History | | | Su |

# Detail by Entity Name

## Florida Limited Liability Company

CENTURY HAMMOCKS, LLC

## Filing Information

| | |
|---|---|
| **Document Number** | L05000006057 |
| **FEI/EIN Number** | 202228674 |
| **Date Filed** | 01/19/2005 |
| **State** | FL |
| **Status** | ACTIVE |
| **Last Event** | LC AMENDMENT |
| **Event Date Filed** | 11/27/2007 |
| **Event Effective Date** | NONE |

## Principal Address

1951 NW 19TH STREET
200
BOCA RATON FL 33431

Changed 03/14/2006

## Mailing Address

1951 NW 19TH STREET
200
BOCA RATON FL 33431

Changed 03/14/2006

## Registered Agent Name & Address

FALCONE, ROBERT
1951 NW 19TH STREET
SUITE 200
BOCA RATON FL 33431 US

Name Changed: 03/30/2009

Address Changed: 03/30/2009

## Manager/Member Detail

**Name & Address**

Title MGRM

FALCONE, ARTHUR
1951 NW 19TH STREET
BOCA RATON FL 33431

Title MGRM

FALCONE, EDWARD
1951 NW 19TH STREET
BOCA RATON FL 33431

Title MGRM

FALCONE, ROBERT
1951 NW 19TH STREET
BOCA RATON FL 33431

## Annual Reports

| Report Year | Filed Date |
| --- | --- |
| 2007 | 03/28/2007 |
| 2008 | 06/03/2008 |
| 2009 | 03/30/2009 |

## Document Images

| | |
| --- | --- |
| 03/30/2009 -- ANNUAL REPORT | View image in PDF format |
| 06/03/2008 -- ANNUAL REPORT | View image in PDF format |
| 11/27/2007 -- LC Amendment | View image in PDF format |
| 03/28/2007 -- ANNUAL REPORT | View image in PDF format |
| 03/14/2006 -- ANNUAL REPORT | View image in PDF format |
| 01/19/2005 -- Florida Limited Liabilites | View image in PDF format |

**Note:** This is not official record. See documents if question or conflict.

**Previous on List**   **Next on List**   **Return To List**      Entity Na

**Events**         **No Name History**                                     Su

| Home | Contact us | Document Searches | E-Filing Services | Forms | Help |

Copyright and Privacy Policies
Copyright © 2007 State of Florida, Department of State.

# FLORIDA DEPARTMENT OF STATE
# DIVISION OF CORPORATIONS

| Home | Contact Us | E-Filing Services | Document Searches | Forms | H |

**Previous on List**    **Next on List**    **Return To List**                    Entity Na

**Events**    **No Name History**

# Detail by Entity Name

## Florida Limited Liability Company

CENTURY INDEPENDENCE, LLC

## Filing Information

| | |
|---|---|
| **Document Number** | L03000028812 |
| **FEI/EIN Number** | 200133114 |
| **Date Filed** | 08/05/2003 |
| **State** | FL |
| **Status** | ACTIVE |
| **Last Event** | LC AMENDMENT |
| **Event Date Filed** | 11/28/2007 |
| **Event Effective Date** | NONE |

## Principal Address

1951 NW 19TH STREET
SUITE 200
BOCA RATON FL 33431

Changed 04/29/2005

## Mailing Address

1951 NW 19TH STREET
SUITE 200
BOCA RATON FL 33431

Changed 04/29/2005

## Registered Agent Name & Address

GERSON, GARY N
1645 PALM BEACH LAKES BLVD., SUITE 1200
WEST PALM BEACH FL 33401 US

Name Changed: 04/29/2005

## Manager/Member Detail

**Name & Address**

Title MGRM

FALCONE, ARTHUR

1951 NW 19TH STREET
BOCA RATON FL 33431 US

Title MGRM

FALCONE, EDWARD
1951 NW 19TH STREET
BOCA RATON FL 33431 US

Title MGRM

FALCONE, ROBERT
1951 NW 19TH STREET
BOCA RATON FL 33431 US

## Annual Reports

| Report Year | Filed Date |
|-------------|------------|
| 2007 | 03/28/2007 |
| 2008 | 06/03/2008 |
| 2009 | 03/30/2009 |

## Document Images

| | |
|---|---|
| 03/30/2009 -- ANNUAL REPORT | View image in PDF format |
| 06/03/2008 -- ANNUAL REPORT | View image in PDF format |
| 11/28/2007 -- LC Amendment | View image in PDF format |
| 03/28/2007 -- ANNUAL REPORT | View image in PDF format |
| 03/13/2006 -- ANNUAL REPORT | View image in PDF format |
| 04/29/2005 -- ANNUAL REPORT | View image in PDF format |
| 04/30/2004 -- ANNUAL REPORT | View image in PDF format |
| 08/05/2003 -- Florida Limited Liabilites | View image in PDF format |

**Note:** This is not official record. See documents if question or conflict.

**Previous on List**     **Next on List**     **Return To List**                    Entity Na

**Events**                 **No Name History**                                          Su

| Home | Contact us | Document Searches | E-Filing Services | Forms | Help |

Copyright and Privacy Policies
Copyright © 2007 State of Florida, Department of State.

http://www.sunbiz.org/scripts/cordet.exe?action=DETFIL&inq_doc_number=L030000288...   7/29/2009



| Home | Contact Us | E-Filing Services | Document Searches | Forms | H |

Previous on List     Next on List     **Return To List**                                    Entity Na

Events                No Name History                                                        Su

# Detail by Entity Name

## Florida Limited Liability Company

CENTURY LIVE OAK PRESERVE, LLC

## Filing Information

**Document Number**       L02000034543
**FEI/EIN Number**        341975143
**Date Filed**            12/23/2002
**State**                 FL
**Status**                ACTIVE
**Last Event**            LC AMENDMENT
**Event Date Filed**      11/28/2007
**Event Effective Date**  NONE

## Principal Address

1951 NW 19TH STREET
SUITE 200
BOCA RATON FL 33431

Changed 04/29/2005

## Mailing Address

1951 NW 19TH STREET
SUITE 200
BOCA RATON FL 33431

Changed 04/29/2005

## Registered Agent Name & Address

FALCONE, ROBERT
1951 NW 19TH STREET
SUITE 200
BOCA RATON FL 33431 US

Name Changed: 03/30/2009

Address Changed: 04/29/2005

## Manager/Member Detail

**Name & Address**

Title MGRM

ELSNER, NEIL
3300 UNIVERSITY DR STE 001
CORAL SPRINGS FL 33065

Title MGRM

FALCONE, ART
1951 NW 19TH STREET
BOCA RATON FL 33431

Title MGRM

FALCONE, ROBERT
1951 NW 19TH STREET
BOCA RATON FL 33431 US

Title MGRM

FALCONE, EDWARD
1951 NW 19TH STREET
BOCA RATON FL 33431 US

## Annual Reports

| Report Year | Filed Date |
|---|---|
| 2007 | 03/28/2007 |
| 2008 | 04/29/2008 |
| 2009 | 03/30/2009 |

## Document Images

| | |
|---|---|
| 03/30/2009 -- ANNUAL REPORT | View image in PDF format |
| 04/29/2008 -- ANNUAL REPORT | View image in PDF format |
| 11/28/2007 -- LC Amendment | View image in PDF format |
| 03/28/2007 -- ANNUAL REPORT | View image in PDF format |
| 03/13/2006 -- ANNUAL REPORT | View image in PDF format |
| 04/29/2005 -- ANNUAL REPORT | View image in PDF format |
| 04/30/2004 -- ANNUAL REPORT | View image in PDF format |
| 07/21/2003 -- ANNUAL REPORT | View image in PDF format |
| 12/23/2002 -- Florida Limited Liabilites | View image in PDF format |

**Note:** This is not official record. See documents if question or conflict.

Previous on List      Next on List      Return To List                          Entity Na

Events                No Name History                                              Su

| Home | Contact us | Document Searches | E-Filing Services | Forms | Help |

Copyright and Privacy Policies
Copyright © 2007 State of Florida, Department of State.

| Home | Contact Us | E-Filing Services | Document Searches | Forms | H |

**Previous on List**   **Next on List**   **Return To List**                    Entity Na

**Events**            **No Name History**

# Detail by Entity Name

## Florida Limited Liability Company

CENTURY SAVANNAH PINES, LLC

## Filing Information

| | |
|---|---|
| **Document Number** | L05000006534 |
| **FEI/EIN Number** | 202228920 |
| **Date Filed** | 01/20/2005 |
| **State** | FL |
| **Status** | ACTIVE |
| **Last Event** | LC AMENDMENT |
| **Event Date Filed** | 11/27/2007 |
| **Event Effective Date** | NONE |

## Principal Address

1951 NW 19TH ST
200
BOCA RATON FL 33431

Changed 03/21/2006

## Mailing Address

1951 NW 19TH ST
200
BOCA RATON FL 33431

Changed 03/21/2006

## Registered Agent Name & Address

FALCONE, ROBERT
1951 NE 19TH STREET
SUITE 200
BOCA RATON FL 33431 US

Name Changed: 03/30/2009

Address Changed: 03/30/2009

## Manager/Member Detail

**Name & Address**

http://www.sunbiz.org/scripts/cordet.exe?action=DETFIL&inq_doc_number=L050000065...   7/29/2009

Title MGRM

FALCONE, ARTHUR
1951 NW 19TH ST
BOCA RATON FL 33431

Title MGRM

FALCONE, ROBERT
1951 NW 19TH ST
BOCA RATON FL 33431

Title MGRM

FALCONE, EDWARD
1951 NW 19TH ST
BOCA RATON FL 33431

## Annual Reports

| Report Year | Filed Date |
|-------------|------------|
| 2007 | 03/28/2007 |
| 2008 | 06/03/2008 |
| 2009 | 03/30/2009 |

## Document Images

| | |
|---|---|
| 03/30/2009 -- ANNUAL REPORT | View image in PDF format |
| 06/03/2008 -- ANNUAL REPORT | View image in PDF format |
| 11/27/2007 -- LC Amendment | View image in PDF format |
| 03/28/2007 -- ANNUAL REPORT | View image in PDF format |
| 03/21/2006 -- ANNUAL REPORT | View image in PDF format |
| 01/20/2005 -- Florida Limited Liabilites | View image in PDF format |

**Note:** This is not official record. See documents if question or conflict.

---

**Previous on List**     **Next on List**     **Return To List**                Entity Na

**Events**     **No Name History**                                                    Su

---

| Home | Contact us | Document Searches | E-Filing Services | Forms | Help |

Copyright and Privacy Policies
Copyright © 2007 State of Florida, Department of State.



| Home | Contact Us | E-Filing Services | Document Searches | Forms | H |

**Previous on List** **Next on List** **Return To List**

Entity Na

No Events No Name History

# Detail by Entity Name

## Florida Limited Liability Company

CENTURY SAVANNAH LANDINGS, LLC

## Filing Information

| | |
|---|---|
| **Document Number** | L05000006458 |
| **FEI/EIN Number** | 202228867 |
| **Date Filed** | 01/20/2005 |
| **State** | FL |
| **Status** | ACTIVE |

## Principal Address

1951 NW 19TH ST
SUITE 200
BOCA RATON FL 33431

Changed 03/14/2006

## Mailing Address

1951 NW 19TH ST
SUITE 200
BOCA RATON FL 33431

Changed 03/14/2006

## Registered Agent Name & Address

FALCONE, RONERT
1951 NE 19TH STREET
BOCA RATON FL 33401 US

Name Changed: 03/30/2009

Address Changed: 03/30/2009

## Manager/Member Detail

**Name & Address**

Title MGRM

FALCONE, ARTHUR
1951 NW 19TH ST
BOCA RATON FL 33431

http://www.sunbiz.org/scripts/cordet.exe?action=DETFIL&inq_doc_number=L050000064...    7/29/2009

Title MGRM

FALCONE, ROBERT
1951 NW 19TH ST
BOCA RATON FL 33431

Title MGRM

FALCONE, EDWARD
1951 NW 19TH ST
BOCA RATON FL 33431

## Annual Reports

| Report Year | Filed Date |
| --- | --- |
| 2007 | 03/28/2007 |
| 2008 | 06/03/2008 |
| 2009 | 03/30/2009 |

## Document Images

| | |
| --- | --- |
| 03/30/2009 -- ANNUAL REPORT | View image in PDF format |
| 06/03/2008 -- ANNUAL REPORT | View image in PDF format |
| 03/28/2007 -- ANNUAL REPORT | View image in PDF format |
| 03/14/2006 -- ANNUAL REPORT | View image in PDF format |
| 01/20/2005 -- Florida Limited Liabilites | View image in PDF format |

**Note:** This is not official record. See documents if question or conflict.

**Previous on List**      **Next on List**      **Return To List**                Entity Na

**No Events**          **No Name History**                                            Su

| Home | Contact us | Document Searches | E-Filing Services | Forms | Help |

Copyright and Privacy Policies
Copyright © 2007 State of Florida, Department of State.



| | |
|---|---|
| Home | Contact Us   E-Filing Services   Document Searches   Forms   H |

Previous on List     Next on List     Return To List

Events          No Name History

Entity Na

Su

# Detail by Entity Name

## Florida Limited Liability Company

CENTURY VICTORIA PINES LANDINGS, LLC

## Filing Information

| | |
|---|---|
| Document Number | L05000006067 |
| FEI/EIN Number | 202228967 |
| Date Filed | 01/19/2005 |
| State | FL |
| Status | ACTIVE |
| Last Event | LC AMENDMENT |
| Event Date Filed | 11/27/2007 |
| Event Effective Date | NONE |

## Principal Address

1951 NW 19TH STREET
SUITE 200
BOCA RATON FL 33431

Changed 03/14/2006

## Mailing Address

1951 NW 19TH STREET
SUITE 200
BOCA RATON FL 33431

Changed 03/14/2006

## Registered Agent Name & Address

FALCONE, ROBERT
1951 NW 19TH STREET
BOCA RATON FL 33431 US

Name Changed: 03/30/2009

Address Changed: 03/30/2009

## Manager/Member Detail

**Name & Address**

Title MGRM

FALCONE, ARTHUR
1951 NW 19TH STREET
BOCA RATON FL 33431

Title MGRM

FALCONE, ROBERT
1951 NW 19TH STREET
BOCA RATON FL 33431

## Annual Reports

| Report Year | Filed Date |
|-------------|------------|
| 2007 | 03/28/2007 |
| 2008 | 06/03/2008 |
| 2009 | 03/30/2009 |

## Document Images

| | |
|---|---|
| 03/30/2009 -- ANNUAL REPORT | View image in PDF format |
| 06/03/2008 -- ANNUAL REPORT | View image in PDF format |
| 11/27/2007 -- LC Amendment | View image in PDF format |
| 03/28/2007 -- ANNUAL REPORT | View image in PDF format |
| 03/14/2006 -- ANNUAL REPORT | View image in PDF format |
| 01/19/2005 -- Florida Limited Liabilites | View image in PDF format |

**Note:** This is not official record. See documents if question or conflict.

| Previous on List | Next on List | Return To List | | Entity Na |
|---|---|---|---|---|
| Events | No Name History | | | Su |

| Home | Contact us | Document Searches | E-Filing Services | Forms | Help |

Copyright and Privacy Policies
Copyright © 2007 State of Florida, Department of State.

**JS 44** (Rev. 2/08)

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)  **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

ELECTRONIC

**July 30, 2009**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

### I. (a) PLAINTIFFS

CENTURY COMMUNICATIONS OF FLORIDA, INC., a Florida Corporation; CENTURY DANIELS' LANDING, LLC, etc., et al

### DEFENDANTS

BRIGHT HOUSE NETWORKS, LLC

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Nathan E. Nason, Esq./John D. Foster, Nason, Yeager, Gerson, White & Lioce, PA, 1645 Palm Beach Lakes Blvd, Suite 1200, West Palm Beach, FL 33401

Attorneys (If Known)

Amy S. Rubin/Elliot A. Hallak, Ruden, McClosky, 222 Lakeview Avenue, Suite 800, West Palm Beach, FL 33401; 561/838-4500;

**(d)** Check County Where Action Arose:  ☐ MIAMI- DADE  ☐ MONROE  ☐ BROWARD  ☑ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE  HIGHLANDS

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☑ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

*09CV81108 COHN/SELTZER*

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | **PERSONAL INJURY** ☐ 362 Personal Injury - Med. Malpractice | | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 480 Consumer Credit |
| | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☑ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities Employment | ☐ 540 Mandamus & Other | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities Other | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | | | ☐ 465 Other Immigration Actions | | |

### V. ORIGIN (Place an "X" in One Box Only)

☐ 1 Original Proceeding
☑ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

### VI. RELATED/RE-FILED CASE(S)

(See instructions second page):

a) Re-filed Case ☐ YES ☑ NO    b) Related Cases ☐ YES ☑ NO

JUDGE _____    DOCKET NUMBER _____

### VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

28 U.S.C. §1441 and §1332(a)(2)

LENGTH OF TRIAL via _3-4_ days estimated (for both sides to try entire case)

### VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☑ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD
*[signature]*

DATE
July 30, 2009

FOR OFFICE USE ONLY

AMOUNT 776125    RECEIPT # 350 00    IFP