IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

FORT LAUDERDALE DIVISION
CASE NO. 9:09-cv-81108-COHN/SELTZER

CENTURY COMMUNICATIONS OF FLORIDA, INC.,
a Florida corporation, CENTURY DANIEL'S LANDING, LLC, a
Florida limited liability company, CENTURY
FALCON PARC, LLC, a Florida limited
liability company, CENTURY FALCON
PINES, LLC, a Florida limited liability
company, CENTURY HAMMOCKS, LLC, a
Florida limited liability company, CENTURY
INDEPENDENCE, LLC, a Florida limited
liability company, CENTURY LIVE OAK
PRESERVE, LLC, a Florida limited liability
company, CENTURY SAVANNAH PINES, LLC,
a Florida limited liability company, CENTURY
SAVANNAH LANDING, LLC, a Florida limited
liability company and CENTURY VICTORIA PINES
LANDING, LLC, a Florida limited liability company,

      Plaintiffs,
vs.

BRIGHT HOUSE NETWORKS, LLC,
a Delaware limited liability company,

      Defendant.
_____/

## PLAINTIFFS' MOTION TO ENFORCE MEDIATED SETTLEMENT WITH INCORPORATED MEMORANDUM OF LAW

CENTURY COMMUNICATIONS OF FLORIDA, INC., a Florida corporation, CENTURY DANIEL'S LANDING, LLC, a Florida limited liability company, CENTURY FALCON PARC, LLC, a Florida limited liability company, CENTURY FALCON PINES, LLC, a Florida limited liability company, CENTURY HAMMOCKS, LLC, a Florida limited liability company, CENTURY INDEPENDENCE, LLC, a Florida limited liability company, CENTURY

LIVE OAK PRESERVE, LLC, a Florida limited liability company, CENTURY SAVANNAH PINES, LLC, a Florida limited liability company, CENTURY SAVANNAH LANDING, LLC, a Florida limited liability company, CENTURY VICTORIA PINES LANDING, LLC, a Florida limited liability company, NEIL EISNER, ROBERT FALCONE, TRUSTEE and ARTHUR FALCONE, TRUSTEE (collectively, "Century" or the "Century Parties") by and through the undersigned counsel and hereby move for the entry of an Order by this Honorable Court enforcing the mediated settlement and requiring the exchange of general releases, as more specifically set forth herein below:

## Background

1. Pursuant to this Court's Scheduling Order [D.E. 27], the parties engaged in mediation on July 21, 2010.

2. The parties agreed to a settlement memorialized at the mediation in a single-page "Mediation Agreement." A redacted version of the Mediated Settlement is attached hereto as **Exhibit "A"**.

3. Paragraph 2 of the Mediation Agreement states: "The parties shall exchange **general** mutual releases to include among other standard terms the following: a. Confidentiality."

4. Clearly, the use of the term "general" without limiting conditions indicates that the parties would release each other for all claims which they had or could have against each other, including, **but not limited to** those claims they've already asserted in this proceeding.

5. Subsequent to the mediation, the parties exchanged drafts of and comments concerning the releases to be exchanged in connection with the Mediation Agreement, but were unable to agree upon a final version.

6. Bright House proposes to exchange the releases attached hereto as **Composite Exhibit "B"**.

7. The language urged by Bright House is a limited release which would only release each party for all claims "relative to" this litigation, and specifically limits the release to claims which were pled or for which leave to amend was sought, leaving open a myriad of other potential claims that may be outside the scope of the pleadings.

8. On the other hand, Century proposes to exchange the releases attached hereto as **Composite Exhibit "C"** (differences shown in redline) which would release each party for claims "including but not limited to" this litigation.

9. The principle difference concerns the scope of claims released.

10. The parties are unable to agree upon the form of release to be exchanged, necessitating this Motion.

### Memorandum of Law

Generally, Florida courts enforce general releases to further the policy of encouraging settlements. *Mazzoni Farms, Inc. v. DuPont De Nemours and Co.*, 761 So. 2d 306, 314 (Fla. 2000). Settlements are highly favored and will be enforced when it is possible to do so. *Murchison v. Gronel Cypress Hotel Corp.*, 13 F.3d 1483 (11th Cir. 1994). Settlement agreements are construed in accordance with the rules for interpreting contracts. *Robbie v. City of Miami*, 469 So. 2d 1384, 1385 (Fla. 1985). When a contract is clear and unambiguous, the court is required to enforce the contract according to its plain meaning. *BMW of N. Am., Inc. v. Krathen*, 471 So. 2d 585 (Fla. 4th DCA), *review denied*, 484 So. 2d 7 (Fla. 1986). It is never the role of the trial court to rewrite a contract to make it more reasonable for one of the parties or to relieve a party from what turns out to be a bad bargain. *See Barakat v. Broward County Hous.*

*Auth.*, 771 So. 2d 1193, 1195 (Fla. 4th DCA 2000). Here, the mediation settlement agreement calls for the exchange of general, not limited, releases. That provision should be enforced.

Florida law provides that a "general release which is not restricted by its terms to particular claims or demands ... will ordinarily be regarded as embracing all claims or demands which had matured at the time of its execution." *Sottile v. Gaines Constr. Co.*, 281 So. 2d 558, 561 (Fla. 3d DCA 1973). Thus, a general release contemplates the release of **all** claims that may exist between the parties on the date of exchange, not just specifically enumerated ones.

The case of *Virginia Impression Products Co. v. SCM Corp.*, 448 F.2d 262 (4th Cir. 1971), is instructive. In that case a distributor whose exclusive dealership had been terminated by a manufacturer sued the manufacturer for alleged anti-trust violations. However, prior to the lawsuit, the manufacturer and the distributor had entered into a settlement agreement relative to the termination of the dealership. The manufacturer interposed the defensive release, because, similar to this matter, a general release was contemplated by the settlement agreement. The distributor argued that the release was intended to be a special, or limited, release. The Fourth Circuit disagreed, holding:

> We think the language of the settlement agreement, especially paragraph two, is plainly a general release without ambiguity. It could hardly be plainer. The district court found an ambiguity in the "WHEREAS" clause which stated that the parties "have had certain differences" arising from the dealership termination, and that they "now desire to settle those differences." The court below read the clause as limiting the scope of the agreement to "those differences" and reasoned that if it could not be determined from the face of the document what "those differences" were, the intent of the parties presented a factual issue for the jury.
>
> If the agreement purported to be a special release, and not a general one, such a construction might be appropriate. But the very nature of a general release is that the parties desire to settle all matters forever. A general release such as we have here not only

4

> settles enumerated specific differences, but claims "of every kind or character, known and unknown."
>
> A release is just another contract in which the intent of the parties is to be derived from the face of the instrument viewed as a whole. Viewing the settlement agreement as a whole, the intent of the parties to agree to mutual general releases is clear. It is significant, we think that the release agreement recites that the specific "differences" are "in regard to and growing out of" termination of the very dealership agreement now said to have been unlawful and in violation of the antitrust laws. It is true Paragraph one sets out the terms of the agreement on accounts. Had the parties intended to limit their agreement to financial matters there recited they could have stopped there. Instead they went further. The broad language of a general release was included in the context of settling termination of the very Equipment Dealer agreement which is now the basis for claimed antitrust law violations. In such a context we must give effect to the plain meaning of the words.

*Id.* at 265 (citations omitted).

The instant matter involves facts similar to those dealt with by the *Virginia Impression* court. The settlement agreement clearly manifests an intent that the parties exchange general mutual releases. General releases are those which completely and fully release a party from **all** claims as of the date of the release. The elimination of all liability for claims emanating from the underlying asset purchase agreement is a material and important term of settlelment for the Century parties. They bargained for the receipt of a general release. Bright House's proposed release only releases claims that were pled or for which Bright House sought leave to plead. It is not a general release. Accordingly, the language upon which Bright House insists is inconsistent with the intention of the parties and the unambiguous language of the Mediation Agreement must control. Accordingly, the Mediation Agreement must be enforced and the parties must be required to exchange **general** releases. The form of Century's proposed release, attached hereto

5

as Composite Exhibit C, satisfies the requirement for general releases and the Court should require the exchange of those releases.

## Conclusion

In light of the foregoing, the Mediation Agreement must be enforced and Bright House must be required to execute the form of release proposed by Century.

## Certification

I hereby certify that the movant has conferred with all parties or non-parties who may be affected by the relief sought in this Motion in a good faith effort to resolve the issues raised in the Motion and has been unable to do so.

WHEREFORE, Plaintiffs, by and through the undersigned counsel, respectfully request the entry of an Order by this Honorable Court enforcing the mediated settlement and requiring the exchange of general releases, and awarding such additional relief as this Court deems just and appropriate.

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of August, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Dated: August 19, 2010
West Palm Beach, Florida

**NASON, YEAGER, GERSON, WHITE & LIOCE, P.A.**

s/ Nathan E. Nason
Nathan E. Nason, Esq. (Florida Bar Number: 511218)
*nnason@nasonyeager.com*
John D. Foster, Esq. (Florida Bar Number: 518441)
*jfoster@nasonyeager.com*
1645 Palm Beach Lakes Boulevard, Suite 1200
West Palm Beach, FL 33401
Telephone: (561) 686-3307
Facsimile: (561) 656-6547

*Attorneys for Plaintiffs and Third-Party Defendants*

H:\7259\20519\PMotionEnforceSettlementTMW/tmw-clc-sjj-ppe

# SERVICE LIST

*Century Communications of Florida, Inc. et. al. v. Bright House Networks, LLC*
Case No. 9:09-cv-81108-COHN/SELTZER
United States District Court, Southern District of Florida

**Electronically by CM/ECF System**
Amy S. Rubin, Esq. (Florida Bar No.: 476048)
*arubin@foxrothschild.com*
Elliot A. Hallak, Esq. (Florida Bar No.: 762741)
*ehallak@foxrothschild.com*
Fox Rothschild, LLP
222 Lakeview Avenue, Suite 700
West Palm Beach, FL 33401
Telephone: (561) 835.9600
Facsimile: (561) 835.9602


Nathan E. Nason, Esq. (Florida Bar Number: 511218)
*nnason@nasonyeager.com*
John D. Foster, Esq. (Florida Bar Number: 518441)
*jfoster@nasonyeager.com*
Nason, Yeager, Gerson, White & Lioce, P.A.
1645 Palm Beach Lakes Boulevard, Suite 1200
West Palm Beach, FL 33401
Telephone: (561) 686-3307
Facsimile: (561) 656-6547