UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 09-81108-CIV-COHN/SELTZER

CENTURY COMMUNICATIONS OF
FLORIDA, INC., et al.,

    Plaintiffs,

v.

BRIGHT HOUSE NETWORKS, LLC, a
Delaware limited liability company,

    Defendant.
_____/

### ORDER GRANTING PLAINTIFFS' MOTION TO ENFORCE MEDIATED SETTLEMENT

**THIS CAUSE** is before the Court on Plaintiffs' Motion to Enforce Mediated Settlement With Incorporated Memorandum of Law [DE 36] ("Motion to Enforce"). The Court has considered the Motion to Enforce, Defendant Bright House Networks, LLC's Response [DE 37], Plaintiffs' Reply [DE 38], the record in this case, and is otherwise advised in the premises.

### I. BACKGROUND

This dispute arises out of a Purchase Agreement under which Bright House purchased bulk service agreements for cable television and other services to be provided to nine communities. On June 26, 2009, Plaintiffs filed their Complaint for declaratory judgment, specific performance, and breach of contract in the Circuit Court of the Fifteenth Judicial Circuit Court, Palm Beach County Florida. See DE 1. The case was removed to this Court on July 30, 2009 [DE 1]. Defendant then filed its Answer and Affirmative Defenses to Complaint, Third Party Complaint Against Arthur

Falcone and Robert J. Falcone, and Counterclaim on August 6, 2009 [DE 7], alleging a variety of claims relating to the same Purchase Agreement. Plaintiffs and Third Party Defendants filed an Answer to Counterclaim and Third Party Complaint on September 1, 2009 [DE14].

Thereafter, the parties attended mediation on July 21, 2010, where they reached a settlement. The parties signed a Mediation Agreement [DE 36-1], a half-page document containing three paragraphs. The second paragraph states, "The parties shall exchange general mutual releases to include among other standard terms the following: a. Confidentiality." DE 36-1 ¶ 2. On August 19, 2010, Plaintiffs filed their Motion to Enforce [DE 36], in which they stated that the parties were unable to agree on a final version for the releases that the Mediation Agreement required them to exchange.

## II. ANALYSIS

### A. Parties' Contention

The main point of contention between the parties concerns the scope of claims released. Plaintiffs assert that the agreement to exchange "general mutual releases" in the Mediation Agreement was a promise to release "**all** claims that may exist between the parties on the date of exchange, not just specifically enumerated ones." DE 36 at 4 (emphasis in original). In this regard, Plaintiffs propose to release each party for claims "including, but not limited to" those which "(a) were raised, or could have been raised" in this litigation . . . or (b) arise out of that certain Asset Purchase Agreement among Plaintiffs and Defendant dated February 21, 2008, as amended." DE 36-3 at 1. In contrast, Defendant proposes to release each party for claims "relative to" claims "which

were raised" in this litigation." DE 36-2 at 1.  Plaintiff's Motion to Enforce seeks an Order by this Court requiring the exchange of general releases.

Defendant's Response [DE 37] argues that the provision requiring parties to exchange general releases "should not have been included on the executed Mediation Agreement." DE 37 at 4.  The Response claims such releases "were never contemplated by the parties and were not part of the settlement reached by the parties." Id.  Even though Defendant "is not currently planning any additional litigation against Plaintiffs/Guarantors," DE 37 at 4, Defendant does not wish to exchange general releases barring claims not specifically involved in the litigation.

Defendant therefore requests that the Court either delete from the Mediation Agreement the requirement that parties exchange general releases, or that the Court compel parties to execute Defendant's limited version of the releases.  DE 37 at 4.  In the alternative, the Response requests that the Court hold an evidentiary hearing regarding this matter.  Id.  In support, Defendant asserts that the claims and the mediation in this action were only based on certain provisions of the Purchase Agreement, id. at 2, and that the parties did not agree to exchange general releases at their mediation, id. at 4.

### B. Enforceability of the Mediation Agreement

The Mediation Agreement provision requiring the parties to exchange general mutual releases is enforceable as written because it is clear and unambiguous. "Settlement agreements are highly favored, and will be enforced whenever possible." Robbie v. Miami, 469 So. 2d 1384, 1385 (Fla. 1985); accord Murchison v. Gronel Cypress Hotel Corp., 13 F.3d 1483, 1486 (11th Cir. 1994).  Basic contract law applies

3

to determine whether a settlement agreement is enforceable, and in Florida, the objective test is used to determine whether such a contract is enforceable. Robbie, 469 So. 2d at 1385; Gaines v. Nortrust Realty Mgmt, Inc., 422 So. 2d 1037 (Fla. 3d DCA 1982). According to the objective test, "[t]he making of a contract depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs–not on the parties having meant the same thing but on their having said the same thing." Robbie, 469 So. 2d at 1385 (quoting Blackhawk Heating & Plumbing Co. v. Data Lease Fin. Corp., 302 So. 2d 404, 407 (Fla. 1974) (citations omitted)). Thus, "[i]n the absence of ambiguity, the [contract's] language itself is the best evidence of the parties' intent and its plain meaning controls." Barakat v. Broward County Hous. Auth., 771 So. 2d 1193, 1194-95 (Fla. 4th DCA 2000). The Court "cannot indulge in construction or interpretation of [a contract's] plain meaning." BMW of N. Am., Inc. v. Krathen, 471 So. 2d 585, 587 (Fla. 4th DCA 1985).

Here, the Mediation Agreement states, "The parties shall exchange general mutual releases to include among other standard terms the following: a. Confidentiality." DE 36-1 ¶ 2 (emphasis added). Both parties and their counsel signed the Mediation Agreement on July 21, 2010. See id. The parties do not dispute that the terms of the Mediation Agreement are clear and unambiguous or that the signatures are genuine. The parties have thus said the same thing as to the terms of the Mediation Agreement under the objective test articulated in Robbie, 469 So. 2d at 1385 (applying Blackhawk, 302 So. 2d at 407). Accordingly, because the Mediation Agreement is clear and unambiguous, and because it meets the objective test, it must be enforced as written, meaning that the parties agreed to exchange general releases. See Robbie, 469 So. 2d at 1385; Barakat, 771 So. 2d at 1194-95. It is not this Court's

role to rewrite the Mediation Agreement, especially when both parties had ample opportunity to review the document before signing it in front of a neutral mediator. See Barakat, 771 So. 2d at 1195 (holding that a trial court should not "rewrite a contract to make it more reasonable for one of the parties or to relieve a party from what turns out to be a bad bargain").

### C. Unilateral Mistake

The Mediation Agreement provision requiring the parties to exchange general mutual releases will not be set aside on the basis of unilateral mistake because any mistake on Defense Counsel's part was the result of inexcusable lack of due care. Though Florida permits a contract to be set aside in the event of a unilateral mistake, a contract will not be set aside when the mistake is the result of inexcusable lack of due care. Krathen, 471 So. 2d at 588; accord BP Prods. N. Am., Inc. v. Oakridge at Winegard, Inc., 469 F. Supp. 2d 1128, 1139 (M.D. Fla. 2007). Inexcusable lack of due care exists when, for instance, an attorney omits an essential term from a settlement agreement. Krathan, 471 So. 2d at 588 (finding inexcusable lack of due care when attorney omitted the fact that returning a vehicle was condition precedent to receiving settlement payment); Oakridge, 469 F. Supp. 2d at 1139 (finding inexcusable lack of due care when attorney omitted discussion of reimbursement amount that plaintiffs had promised to defendants).

Defendant asserts that the provision regarding exchange of general releases "should not have been included on the executed Mediation Agreement." DE 37 at 4. Defense Counsel, Ms. Amy S. Rubin, maintains that at the July 21, 2010 mediation, as the parties were approaching a resolution, the mediator handed Ms. Rubin a proposed

5

Mediation Agreement template, Ms. Rubin had her assistant insert the case style and signature blocks, and then the parties and their counsel signed the Mediation Agreement. DE 37 at 3; DE 37-1 ¶¶ 8-9. Despite the fact that Ms. Rubin had two opportunities to read the Mediation Agreement, once before handing it to her assistant and again before signing, Ms. Rubin appears to suggest that she never read it. Just as omitting an essential term constituted inexcusable lack of due care in Krathan, 471 So. 2d at 588, and Oakridge, 469 F. Supp. 2d at 1139, failure to delete or otherwise modify an essential term similarly constitutes inexcusable lack of due care. The provision at issue was not hidden in the contract, but rather was one of three paragraphs on a short, half-page long document. If Ms. Rubin did not intend to commit her client to exchange general mutual releases with Plaintiffs, then she should have read the document and raised the issue before signing. Therefore, even if Ms. Rubin's failure to read the contract did constitute a unilateral mistake, the Mediation Agreement provision regarding exchange of general mutual release will not be set aside because any mistake was the result of inexcusable lack of due care.

### III. CONCLUSION

In light of the foregoing reasons, the Mediation Agreement will be enforced as written, and the parties will be required to exchange general mutual releases. Therefore, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. Plaintiffs' Motion to Enforce Mediated Settlement with Incorporated Memorandum of Law [DE 36] is **GRANTED**. The Court will enforce the Mediation Agreement as written. The parties shall execute general releases on

or before **October 8, 2010** and file notice with the Court upon completion of the execution;

2. Defendant's request for an evidentiary hearing is **DENIED**;

3. Upon filing of the Notice of Exchange of Executed Releases, Plaintiff shall file a Notice of Dismissal with Prejudice pursuant to the Mediation Agreement.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 29TH day of September, 2010.

JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF